747 F.2d 1102
 UNITED STATES of America, Plaintiff-Appellee,
v.
Virgil Raymond CATLETT, III; Farrell E. Goulart; Ronald C.
Goulart; Ronald Lee Gregory; Robert Dewey Hale; George
Lebron Higgins; Johnny W. Masters; John R. Meldorf; Leroy
Simmons; Gregory Leon Smith; Ronald Talmadge Stansell;
Bobby Terrell Tucker; Jackie R. Barker, Defendants-Appellants.
 No. 84-5249.
 United States Court of Appeals,
Sixth Circuit.
 Argued Oct. 2, 1984.
Decided Nov. 19, 1984.
 
 John R. Meldorf (argued), Meldorf & Young, Hixson, Tenn., Robert D. Hale (argued), Chattanooga, Tenn., for defendants-appellants.
 John W. Gill, U.S. Atty., Chattanooga, Tenn., John C. Littleton, Asst. U.S. Atty. (argued), for plaintiff-appellee.
 Before KRUPANSKY and WELLFORD, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.
 I.
 PER CURIAM.
 
 
 1
 Defendants were convicted and fined in federal district court for violating The Migratory Bird Treaty, 16 U.S.C. Secs. 703-711, and they appeal these convictions.
 
 
 2
 On August 26, 1982, agents of the Tennessee Wildlife Service, informed by an anonymous tipster, entered a field in Bledsoe County, Tennessee, and discovered it to be "baited" with piles of cracked corn and wheat in different locations. On September 4, 1982, less than ten days later, state and federal agents again went to the field and discovered a dove hunt in progress. They cited defendants for hunting migratory birds on a baited field, in violation of federal statute and regulations promulgated thereunder.
 
 
 3
 On the day of the hunt, there was very little "bait" still present in the field. There was testimony that there were two or three places where bait had been, but, at best there were only traces of the bait left.[1] The only true pile of bait existing on the field was a pile which was allegedly covered by recent "bush-hogging." The unfortunate defendants were apparently unaware of, and had not participated in, the baiting of the field.
 
 
 4
 The Scenic Land Hunting Club (the "Club") had rented the tract of land and field at issue from one Charles G. Thomas. Evidently, the ownership of this land was contested by other individuals. As a result of this contest, the Club took legal action and through the efforts of its attorney, John R. Meldorf, also a defendant, obtained a restraining order[2] prohibiting those other individuals from entering upon the land, or threatening to interfere with its use for hunting. Ironically, according to defendants, on the day of the hunt the Sheriff of Bledsoe County and his deputy were requested by the Club to be present at the field to enforce the order in the event any trouble occurred resulting from the issuance of the restraining order. Also, defendants posted copies of the order at various points around the hunting area in an effort to avoid any problems.
 
 
 5
 There was in fact no evidence introduced at trial tending to show that any of the defendants either baited the field, or knew that it was baited at any time. The question presented, therefore, is whether individuals who are without knowledge that a field has been baited may still be found criminally liable under 16 U.S.C. Secs. 703-711.
 
 II.
 
 6
 Section 703 of Title 16 makes it unlawful for any person, "at any time, by any means or in any manner, to pursue, hunt, take, capture, kill, attempt to take, capture, or kill, ... any migratory bird." 16 U.S.C. Sec. 703. That same statute allows for exceptions to this general proscription to be prescribed by the Secretary of the Interior. Pursuant to this delegated power, the Secretary has promulgated regulations allowing the taking of migratory birds only in a very limited and specific manner. See 50 C.F.R. Sec. 20.1 (1983). One of the restrictions laid down by the Secretary is that migratory birds may not be taken:
 
 
 7
 By the aid of baiting, or on or over any baited area. As used in this paragraph, "baiting" shall mean the placing, exposing, depositing, distributing, or scattering of shelled, shucked, or unshucked corn, wheat or other grain, salt, or other feed so as to constitute for such birds, a lure, attraction or enticement to, on, or over any areas where hunters are attempting to take them; and "baited area" means any area where shelled, shucked, or unshucked corn, wheat or other grain, salt, or other feed whatsoever capable of luring, attracting, or enticing such birds is directly or indirectly placed, exposed, deposited, distributed, or scattered; and such area shall remain a baited area for 10 days following complete removal of all such corn, wheat or other grain, salt, or other feed.
 
 
 8
 50 C.F.R. Sec. 20.21(i) (emphasis added).
 
 
 9
 Therefore, this regulation effectively proscribes two different kinds of conduct; (1) taking migratory birds "by aid of baiting," and (2) taking migratory birds "on or over any baited area." See United States v. Bryson, 414 F.Supp. 1068, 1072 (D.Del.1976). The penalty set out by Congress is a fine of not more than $500, or imprisonment for not more than six months. 16 U.S.C. Sec. 706. In the present case, appellants have been charged and convicted only under the latter offense, taking migratory birds on or over a baited field.
 
 
 10
 There was direct testimony to the effect that on August 26, 1982 (nine days prior to the hunt) the field was baited. Under the definition of "baited field," see 50 C.F.R. Sec. 20.21(i), this field was therefore baited on September 4, 1982, the day of the hunt.[3] The majority view, and the view of this circuit, is that there need be no showing that the defendants actually baited the field, or that they even knew it was baited; rather the crime is a strict liability offense. In United States v. Green, 571 F.2d 1, 2 (6th Cir.1977), this circuit held that 50 C.F.R. Sec. 20.21(i) does "not require proof of knowledge." (Citation omitted). This was subsequently reaffirmed in United States v. Brandt, 717 F.2d 955, 958 n. 3 (6th Cir.1983). In Brandt, although the court was dealing with a somewhat different issue,[4] it was stated:
 
 
 11
 The hunter is therefore placed in a precarious position .... A subjectively "innocent" person can unwittingly run afoul of the regulation. However, this is inherent in all so called "public welfare offenses" wherein scienter is not an element of the offense and these types of offenses have long been sanctioned by the courts.
 
 
 12
 Id. at 958 (footnote omitted).
 
 
 13
 The Sixth Circuit is not alone in this view. See, e.g., United States v. Jarman, 491 F.2d 764 (4th Cir.1974). We find that only United States v. Delahoussaye, 573 F.2d 910 (5th Cir.1978), has taken a different approach. In Delahoussaye, to establish a violation under 16 U.S.C. Secs. 703-711, a minimum of scienter was required to be proven. The court concluded that a "reason to know" that the field has been baited must be demonstrated, stating:
 
 
 14
 Any other interpretation would simply render criminal conviction an unavoidable occasional consequence of duck hunting and deny the sport to those such as, say, judges who might find such a consequence unacceptable. On the other hand, to require a higher form of scienter--actual guilty knowledge--would render the regulations very hard to enforce and would remove all incentive for the hunter to clear the area, a precaution which can reasonably be required. Such a reading is unnecessary to the regulations' constitutionality, and we reject it.
 
 
 15
 Id. at 912-13.
 
 
 16
 Were we writing with a clean slate, this reasoning would be appealing, but this view was expressly rejected in Brandt, 717 F.2d at 958 n. 3. We also rejected in Green any argument that there must be proof that the baiting was done for the hunters' benefit. 571 F.2d at 2. The law is, unhappily for defendants, established that scienter is not required for a conviction.[5] We concede that it is a harsh rule and trust that prosecution will take place in the exercise of sound discretion only. It is for Congress and the Secretary of the Interior to establish and change the policies here involved.
 
 III.
 
 17
 We reluctantly in this case must AFFIRM the decision of the district court.
 
 
 
 [1]
 On September 1, 1982, bait was observed still to be on the field
 
 
 [2]
 Meldorf, according to defendants' brief, at the time of the hunt was only a "guest of the Club in recognition of his obtaining the restraining order." Also, Meldorf "was so unfamiliar with the [field] that he drove past [it] three times before he found it." See Brief for Defendants-Appellants at 7. Thus, we are presented here with a different kind of "attorney's fee" question
 
 
 [3]
 Appellants also contest the sufficiency of the evidence tending to show bait on the field the day of the hunt. They concede, however, the fact that bait was on the field just nine days prior thereto. Under the regulations adopted by the Secretary, there need be no bait on the field on the day of the hunt. 50 C.F.R. Sec. 20.21(i)
 
 
 [4]
 The court was addressing 50 C.F.R. Sec. 20.21(i)(2), a proviso that allows taking migratory birds over land that is of "bona fide agricultural operations." The court unanimously upheld the validity of the statute and its strict liability nature, ruling that when taking migratory birds over a field supposedly seeded for agricultural purposes, the intent of the party doing the seeding is relevant as to whether it was for agricultural purposes. This does not affect the strict liability nature of the offense in regard to the hunter
 
 
 [5]
 Appellants' final argument that the regulations are unreasonable in light of congressional intent is unavailing. The Secretary was given plenary power to allow the taking of migratory birds, which is otherwise wholly unlawful. We are not prepared to say the Secretary's regulations are arbitrary or constitute a "clear error in judgment." Citizens To Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971); 5 U.S.C. Sec. 706(2)(A). Rather, the regulations are entitled to a "presumption of regularity." See National Rifle Association of America, Inc. v. Kleppe, 425 F.Supp. 1101, 1111 (D.D.C.1976), aff'd, 571 F.2d 674 (D.C.Cir.1978)