491 So.2d 987 (1985)
William David ROGERS
v.
STATE.
4 Div. 445.
Court of Criminal Appeals of Alabama.
May 14, 1985.
On Return to Remand January 7, 1986.
Rehearing Denied April 22, 1986.
Certiorari Denied June 20, 1986
Larry R. Grissett, Opp, for appellant.
Charles A. Graddick, Atty. Gen., and David B. Karn, Asst. Atty. Gen., for appellee.
Alabama Supreme Court 85-905.
TAYLOR, Judge.
William David Rogers, a juvenile, was accused of night hunting in violation of *988 § 9-11-235, Code of Alabama 1975. At his trial, he represented himself. The judge, sitting as a juvenile judge, convicted him of this misdemeanor and levied the minimum fine of $250. Counsel was appointed for purposes of this appeal.
The judge found, on the basis of the testimony of Conservation Officers Maguire and Tucker, all the necessary elements of the misdemeanor. He found a prima facie case was made that Rogers did in fact "take, capture, or kill or attempt to take, capture, or kill any bird or animal protected by the laws of this state between sunset and daylight...." See C. Gamble, McElroy's Alabama Evidence § 449.05 (3d ed. 1977).

I
Appellant contends through counsel that an attorney should have been appointed to represent him at the trial level, and cites Rule 11 of the Alabama Rules of Juvenile Procedure. Rule 11(A), cited in appellant's brief, relates to the rights of the child to counsel when he is taken into custody. There is no evidence that Rogers was ever taken into custody in this case, so that Rule 11(A) does not apply to him. For all that appears, he was simply issued a citation. Rule 11(G), Alabama Rules of Juvenile Procedure, which refers to a right of counsel, relates to certain juvenile court "proceedings"; either "detention" or "shelter" or "other care" hearings, or to proceedings commenced by petition. Rule 11 states: "The child has a right to be represented by counsel at all stages of the proceeding." Rule 11(G) goes on to state:
"(1) If [sic] any proceeding in which there is a reasonable likelihood that the child may be committed to an institution in which his freedom may be curtailed, and if counsel has not otherwise been retained, counsel shall be appointed for the child.
"(2) In all other proceedings, the court may appoint counsel in any case upon request or when it deems such appointment is in the interest of justice." (Emphasis supplied.)
In this instance, the possible penalty for the first offense against the Code of Alabama 1975, § 9-11-235, is stated as follows:
"Any person violating any of the provisions of this section shall be guilty of a misdemeanor and, upon conviction thereof, shall be punished for the first offense by a fine of not less than $250.00 nor more than $500.00 and, at the discretion of the court, may have all hunting license privileges revoked for a period of up to one year from the date of conviction."
It is therefore apparent that in this instance there was no "reasonable likelihood that the child may be committed to an institution in which his freedom may be curtailed...." This means the question of appointment of counsel was a matter controlled by Rule 11(G)(2) and was within the sound discretion of court in the interest of justice. Whether or not the juvenile asked for a lawyer, the court had the option to appoint him one. These rules seem to be entirely consistent with the provisions of Argersinger v. Hamlin, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972), relating to constitutional requirements of appointment of counsel. The court did not abuse its discretion in not appointing trial counsel.

II
The testimony of the first witness, Conservation Officer Tucker, was not transcribed by the court reporter. The omission was noticed immediately after it occurred. The court mentioned the difference in the testimony of this witness and that of the other conservation officer. Witness Tucker was recalled for further testimony which appears on pages 13 through 15 of the record.
Rule 10(f) of the Alabama Rules of Appellate Procedure provides as follows:
"Correction or Modification of the Record. If any difference arises as to whether the record truly discloses what occurred in the trial court, the difference shall be submitted to and settled by that *989 court and the record made to conform to the truth. If anything material to either party is omitted from the record by error or accident or is misstated therein, the parties by stipulation, or the trial court either before or after the record is transmitted to the appellate court, or the appellate court, on proper suggestion or of its own initiative, may direct that the omission or misstatement be corrected and if necessary that a supplemental record be certified and transmitted. All other questions as to the form and content of the record shall be presented to the appellate court."
It is undisputed in this case that the record fails to truly disclose what occurred in the trial court because the testimony of the principal witness for the state was not taken down and made part of the reporter's transcript. We are unable to rule that the court's reference to Tucker's testimony, even when combined with his brief recall to the stand, satisfies the requirements of Rule 10(f), Alabama Rules of Appellate Procedure. The parties have not stipulated that the omission or the misstatement be corrected. The court has not directed that the omission or misstatement be corrected, nor that a supplemental record be certified and transmitted. Consequently, this case is due to be remanded to the trial court for a Rule 10(f) hearing to supplement the record by adding thereto the testimony of the witness, Mr. Tucker.
This case is remanded to the trial court for a 10(f) hearing to complete the record.
REMANDED WITH DIRECTIONS.
All the Judges concur.

ON RETURN TO REMAND
TAYLOR, Judge.
This case was remanded to the Juvenile Court of Covington County to supplement the trial record by re-taking testimony that was inadvertently omitted from the original transcript. The trial court recalled state's witness, Conservation Officer James T. Tucker, who testified and was duly crossexamined by appellant's counsel. He stated that he and his partner, Conservation Officer John Gargis, were on duty December 11, 1984, at approximately 10:00 p.m. between Rose Hill and the Friendship Community. They were working night time deer hunting, seeking to apprehend people "shining deer" with a spotlight. He said "... [W]e just pick out an area and go and sit and wait and watch." They heard a motorcycle about a quarter of a mile away. Thereafter, they observed the motorcyclist enter a field on his machine, and turn off the motor and the light. Nearly 30 minutes later, Tucker heard the motorcycle being started and saw the headlight as the vehicle circled the pasture. As the cyclist approached the gate entrance, Officer Tucker jumped from his hiding place behind a clump of bushes and began waving his flashlight in an effort to get the cyclist to stop. Rather than stopping, however, the cyclist increased his speed and, with a "bloodcurdling scream" headed straight toward the gate entrance and Tucker.
As the motorcycle sped past, Tucker observed a gun slung over the cyclist's shoulder. Officer Gargis, who had remained by the truck, turned on his blue lights and pursued the rider. He did not stop and they followed him to a nearby house. The officers knocked on the door, were let in, and found appellant Rogers with his shirt, shoes, and socks removed. They charged the appellant with night hunting.
The Juvenile Court of Covington County adjudged the appellant delinquent by virtue of his night hunting in violation of § 9-11-235, Code of Alabama 1975, and assessed a fine of $250.
Section 9-11-235 provides:
"It shall be unlawful, except as to trapping or otherwise provided by law, for any person to take, capture or kill or attempt to take, capture or kill any bird or animal protected by the laws of this state between sunset and daylight of the following day ..."
The authority of the state to regulate the hunting of its game animals derives from the long established and well *990 recognized principle of law that ownership of wild animals is vested in the state. La Coste v. Department of Conservation, 263 U.S. 545, 44 S.Ct. 186, 68 L.Ed. 437 (1923); Sanders v. State, 53 Ala.App. 534, 302 So.2d 117 (Ala.Cr.App.1974); Key v. State, 215 Tenn. 136, 384 S.W.2d 22 (1964); Rosenfeld v. Jakways, 67 Mont. 558, 216 P. 776 (1923); Barrow v. Holland, 125 So.2d 749 (Fla.1960); § 9-11-230, Code of Alabama 1975. By virtue of its police power the state has plenary authority to regulate the taking and hunting of wild animals within its borders.
"... (A)ll property rights in ferae naturae were in the sovereign. The killing, taking, and regulation of game and other wildlife were subject to absolute governmental control for the common good. This absolute power to control and regulate passed with the title to the game and wildlife to the several states subject only to the applicable provisions of the Federal Constitution." Cook v. State, 192 Wash. 613, 74 P.2d 198, 201-02 (1937).
Alabama's abundance of game, fish, and fowl, a great natural resource, is part of our heritage. Within our lifetimes we have witnessed the depletion of wildlife habitat, to the endangerment of many species. It is clear that state regulation of the taking of game is necessary, and it extends, and always has extended, to privately owned land.
Appellant Rogers contends that the evidence presented by the state was insufficient to support an adjudication of delinquency based on night hunting. A review of Alabama case law does not clearly identify the elements of this offense. Other jurisdictions have designated the elements. In Florida:
"The displaying or use of a light in a place where deer might be found, and in a manner capable of disclosing the presence of deer together with the possession of firearms or other weapons customarily used for the taking of deer, between one hour after sunset and one hour before sunrise, should be prima facie evidence of intent to violate the provisions of [this Act]." Fla. Statutes § 372.99(2) (1983).
The Washington Supreme Court held that:
"When the state has produced evidence that a defendant has an artifical light and a rifle or other firearm in his possession after sunset in any wooded section or other place where deer or other animals mentioned in the statute may reasonably be expected, the state has then proven a prima facie case of violation of the statute, which requires that the case be submitted to the jury." State v. Person, 56 Wash.2d 283, 287, 352 P.2d 189, 192 (1960).
Maine has ruled that:
"There are certain elements necessary to night hunting. It must be night time as distinguished from daytime, and within the times set by statue, there must be present and available certain instrumentalities, that is, a light, a gun and ammunition and back of this a purpose to search, find and possess the animal.
".... Intent or purpose is evidenced by the acts of the offender." State v. Allen, 151 Me. 486, 489, 121 A.2d 342, 344 (1956).
We find, based upon the language of § 9-11-235, Code of Alabama 1975, that a prima facie case for night hunting is established when the state demonstrates that the accused (1) is in an area which deer or other protected animals are thought to frequent, (2) has in his possession a light, and (3) has in his possession a weapon or other device suitable for taking, capturing, or killing an animal protected by state law, (4) at night.
The appellant was discovered after dark in an area inhabited by deer, having in his possession a rifle. We also find it reasonable to conclude that the headlight of a motorcycle is suitable for "shining" deer, since it can easily be aimed. The fact that he raced to his house and began to remove his clothing in an apparent effort to make it appear he had not been out of his house is additional evidence of guilty intent.
*991 We find the evidence abundant to support the adjudication.
AFFIRMED.
All the Judges concur.