**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Harvey W. VAN FOSSAN,
Defendant–Appellant.**

**No. 89–3102.**

United States Court of Appeals,
Seventh Circuit.

Argued March 2, 1990.

Decided April 9, 1990.

---

Byron G. Cudmore, Asst. U.S. Atty., Office of the U.S. Atty., Springfield, Ill., for plaintiff-appellee.

Thomas R. Appleton, Morse, Giganti & Appleton, Springfield, Ill., for defendant-appellant.

Before CUMMINGS, POSNER and EASTERBROOK, Circuit Judges.

EASTERBROOK, Circuit Judge.

This case is for the birds: migratory birds, protected by the Migratory Bird Treaty Act, 16 U.S.C. §§ 703–11. Springfield's city fathers concluded that too many pigeons were congregating at a vacant lot near Harvey Van Fossan's home, and they told him to get rid of them. He did, first by shooting them and then, to take care of the nimble ones, by spreading corn and wheat suffused with strychnine. Two common grackles and two mourning doves arrived and learned that there ain't no such thing as a free lunch. Their bodies were found nearby and shipped to the Smithsonian Institution in Washington, D.C., for autopsy. The pathologist's report: strychnine poisoning. The ensuing information against Van Fossan has been characterized by the prosecutor as "one of the most important cases" of his office.

Neither the common grackle (*Quiscalus quiscula*) nor the mourning dove (*Zenaida macroura*) is endangered or even threatened. The mourning dove, a member of the pigeon family whose name comes from its sad song, nests in all 48 adjacent states and summers in Alaska. Its estimated population in North America exceeds 400 million. John K. Torres, *The Audubon Society Encyclopedia of North American Birds* 730 (1980). The common grackle, a large member of the troupial (meadowlark) family often called a "blackbird" or "jackdaw", averages more than a foot in length with a wingspan of 17–18½ inches. Like its relatives the boat-tailed grackle and the great-tailed grackle, the common grackle nests throughout North America east of the Rocky Mountains, and on occasion wings into the Pacific northwest. Common grackles enjoy urban living and are "seen much on lawns and in evergreen trees in cities, parks, suburbs", sometimes coming together in a "large noisy roost of thousands, ... sometimes in cities or suburban shade trees", *id.* at 940. Although neither species seems to need protection, each is "migratory", and the regulations under the Migratory Bird Treaty Act do not allow people to poison them—although it is permitted to shoot them, provided the hunter does not employ bait, which would not be sporting. 50 C.F.R. § 20.21.

Van Fossan was tried before Magistrate Evans, who convicted him, fined him $450, and put him on probation for three years. He appealed to the district judge on

the authority of 18 U.S.C. § 3402 and, when the district judge affirmed, to us on the authority of 28 U.S.C. § 1291. Ours is the second appellate opinion in Van Fossan's case; there have been two rounds of appellate briefs and arguments. One may well wonder why the defendant should have two appeals as of right in a misdemeanor case, when the accused gets only one in a felony prosecution that may land him in prison for life. On the civil side, parties who opt for trial by magistrate must elect either a direct appeal to the court of appeals, 28 U.S.C. § 636(c)(3), or an appeal to the district judge plus an opportunity to seek discretionary review in the court of appeals, 28 U.S.C. § 636(c)(4), (5). A similar arrangement for criminal cases would avoid the anomaly that more judges review misdemeanor convictions than review felony convictions. Nonetheless, § 636(c) does not apply to criminal cases. Section 1291, which does, allows appeal of all "final decisions" of district courts. This is one, notwithstanding its earlier decision by a magistrate, and we have jurisdiction. See *United States v. Forcellati*, 610 F.2d 25, 28 (1st Cir.1979).

■ One of Van Fossan's neighbors said she saw him spread purple grain on the lot, which his son Kevin owned. She thought this odd and picked up a little. Another noticed the strange grain and collected some but did not see Van Fossan scatter it. Both samples were tested and found to contain strychnine. Van Fossan points out that no such grain could be found on the lot later, but perhaps the birds ate it all. To believe the neighbors is to conclude that Van Fossan is guilty, and the trier of fact was entitled to credit their testimony. Here Van Fossan sees an opening, for Magistrate Evans actually expressed this thought in the negative: he said that in order to acquit Van Fossan he would have to disbelieve the neighbors. This misstatement of the burden of proof requires a new trial, he submits. On the initial appeal, the district judge concluded that the magistrate was well aware of the prosecutor's burden, and we agree.

Precise statements of burdens are essential in jury trials, for jurors rely on the judge's description of the law. When discussing the case with counsel, judges are not confined to formulaic recitations. The essential thought is that this case was a swearing contest: Van Fossan denied spreading grain containing strychnine, and two neighbors presented fatal grain they said they had collected from Van Fossan's lot. Although it is technically possible for the trier of fact to believe the neighbors and disbelieve Van Fossan, yet still find the evidence insufficient to show guilt beyond a reasonable doubt—maybe someone in addition to Van Fossan spread poisoned grain on his lot, and this other grain killed the doves and grackles—this possibility is too remote to worry about. Magistrates know fundamental principles such as the "reasonable doubt" rule, and appellate courts ought not infer from ambiguous expressions that they have contravened the basic norms of the legal system.

The magistrate excluded Van Fossan's proffer of testimony from the postman and others who had seen dead birds in the neighborhood on other occasions. Van Fossan says that this testimony would have bolstered his defense. It is hard to see how, since the case against him was based on the autopsy showing that the birds died from strychnine. Testimony concerning other birds that died natural deaths or were caught by cats could not have sapped its power. Magistrate Evans acted within his discretion under Fed.R.Evid. 403 in excluding this evidence. Finally, Van Fossan contends that the sentence is excessive. Probation plus $450 is not excessive for this pre-guideline birdslaughter case. Under Guideline § 2Q2.1(a) the base offense level for this crime is 6. Fines for offense level 6 run from $500 to $5,000; the guidelines also prescribe a sentence range of probation to six months' imprisonment. Van Fossan should count himself lucky.

■ Lurking in the bushes is a question about intent. Need the defendant know the species of bird involved, and that this species (perhaps this very bird) is "migratory"? Methods adequate to cope with pi-

geons, starlings, and other pests are bound to kill an occasional migratory bird. Can it be that the Migratory Bird Treaty Act condemns as criminal anyone who takes (effective) steps to rid his land of pigeons carrying histoplasmosis? The answer is "yes" if, as other circuits hold, the Migratory Bird Treaty Act establishes a strict liability offense. See *United States v. Engler*, 806 F.2d 425, 432 (3d Cir.1986), collecting cases. People who assault federal officers commit a federal crime without knowing that the victim is a *federal* officer, *United States v. Feola*, 420 U.S. 671, 95 S.Ct. 1255, 43 L.Ed.2d 541 (1975); perhaps those who assault birds need not know that the victims are migratory. On the other hand, an attack on a person is presumptively criminal, and the offender has no compelling interest in which body of law supplies the penalty. Cases such as *United States v. Park*, 421 U.S. 658, 95 S.Ct. 1903, 44 L.Ed.2d 489 (1975), holding that the food cleanliness statutes establish strict liability offenses, come closer to the mark. See also *Regina v. Ojibway*, 8 Crim.L.Q. 137 (1965), convicting a person under the Small Birds Act, despite the fact that the animal involved was a horse and the defendant was unaware that Ontario defines horses as birds. (The horse in question was an animal "covered with feathers" because its rider used a pillow as a saddle. Although it is a tour de force of statutory "construction", *Ojibway* is mercifully fictitious, something not always understood. *United States v. Byrnes*, 644 F.2d 107, 112 n. 9 (2d Cir. 1981).) We mention the question of intent only to show that we do not resolve it today, for Van Fossan has not groused about this issue. Given *Engler* and like cases, it was not plain error to convict Van Fossan without establishing that he knew his tactics would kill migratory birds.

AFFIRMED.