771 So.2d 1061 (1998)
W.A. PHILLIPS
v.
STATE.
CR-96-0001.
Court of Criminal Appeals of Alabama.
December 18, 1998.
Rehearing Denied March 26, 1999.
*1062 David C. Johnson, Birmingham, for appellant.
Bill Pryor, atty. gen., and Yvonne A.H. Saxon, asst. atty. gen., for appellee.
LONG, Presiding Judge.
The appellant, W.A. Phillips, was convicted of hunting over a "baited field," a violation of § 9-11-244, Ala.Code 1975. He was fined $375 and his hunting privileges were revoked for one year.
The state's evidence tended to show the following. On March 30, 1995, Willie Morris, an officer with the Alabama Department of Conservation and Natural Resources, received a telephone call from Don Taylor. Taylor told Morris that he had found wheat in a turkey he had killed at a hunting club located adjacent to Phillips's property. The following day, Officer Morris, accompanied by Taylor, entered a wooded area of Phillips's property, where Officer Morris found a large amount of wheat scattered on the ground. Sprouted wheat, as well as seed wheat, was present, and there were numerous turkey scratchings on the ground. Officer Morris returned to the same part of Phillips's property the next day and found Phillips and Guy Moore hunting turkeys in the area where he had found the wheat the day before. Phillips and Moore were charged with hunting over a baited field.
At trial, Phillips denied placing the wheat on his property or knowing that there was wheat there. He claimed that Taylor had actually placed the wheat on his property in order to "set him up."
Phillips's defense notwithstanding, the trial court held that hunting over a baited field is a "strict liability" offense, and, consequently, in its oral charge to the jury, the trial court gave the following charge, which the state had requested: "I charge you that there need be no showing that the defendant actually baited the field, or that he even knew it was baited." (C. 15.) The trial court refused several jury charges requested by Phillips, including the following: "In order to find Archie Phillips guilty as charged, the state must prove beyond a reasonable doubt that he had knowledge that the land had been baited." (C. 17.)
On appeal, Phillips contends that the trial court erred by treating hunting over a baited field as a strict liability offense and in refusing his requested jury instructions concerning the culpable mental state required for a violation of the statute. He maintains that the state should have been required to show that he knew that the land he was hunting on had been baited, and that it was error for the trial court to refuse to so charge the jury.
Section 9-11-244, Ala.Code 1975, provides:
"No person at any time shall take, catch, kill or attempt to take, catch or kill any bird or animal protected by law or regulation of the state of Alabama by means, aid or use, directly or indirectly, of any bait such as shelled, shucked or unshucked corn or of wheat or other grain, salt or any other feed whatsoever that has been so deposited, placed, distributed or scattered as to constitute for such birds or animals a lure, attraction or enticement to, on or over the area *1063 where such hunter or hunters are attempting to kill or take them; provided, that such birds or animals may be taken under properly shocked corn and standing crops of corn, wheat or other grain or feed and grains scattered solely as a result of normal agricultural harvesting and provided further, migratory birds may be hunted under the most recent provisions established by the U.S. Fish and Wildlife Service or regulations promulgated by the Commissioner of the Department of Conservation and Natural Resources within the limits of the federal regulations."
Although Phillips concedes that § 9-11-244 does not expressly designate a culpable mental state for the offense of hunting over a baited field, he argues that the legislature intended for the offense to require "mental culpability." He points to § 13A-2-4(b), Ala.Code 1975, which states:
"Although no culpable mental state is expressly designated in a statute defining an offense, an appropriate culpable mental state may nevertheless be required for commission of that offense, or with respect to some or all of the material elements thereof, if the proscribed conduct necessarily involves such culpable mental state. A statute defining a crime, unless clearly indicating a legislative intent to impose strict liability, states a crime of mental culpability."
While § 13A-2-4(b) states a policy of reluctance to impose strict liability in the absence of clear legislative intent, "[i]t is undisputed that the State may enact laws for the public health and safety imposing strict liabilities without any element of scienter." Walker v. State, 356 So.2d 672, 673 (Ala.1977). Although traditionally mental culpability or some degree of blameworthiness has been considered essential to a finding of criminal liability, this view has been modified to recognize that lawmakers may enact provisions in which a person who does a prohibited act does so at his peril and is liable without regard to mental culpability. Commentary to § 13A-2-3, Ala.Code 1975; see United States v. Balint, 258 U.S. 250, 251, 42 S.Ct. 301, 302, 66 L.Ed. 604 (1922).
"Such offenses [in which no proof of mental culpability is required] are characterized as `mala prohibita offenses,' `public welfare offenses,' `absolute liability offenses,' or, as used here, `strict liability' offenses.
"There are various theories for sustaining `strict liability' crimes. Aside from public necessity based on police powers, a number of these offenses are justified on the ground that it would be difficult or impossible of proof and conviction if the prosecution had to adduce an element of `intentional,' `knowingly' and the like. Sometimes the ends accomplished, the evil or harm sought to be regulated or prohibited, are deemed to justify the means.
"As long as the kind and degree of punishment is not disproportionate to the activity or object regulated, strict liability serves a useful, if not necessary, sanction, but such statutory offenses should not be extended to impose harsh criminal sanctions and stigma for nominal crimes which any innocent man might commit."
Commentary to § 13A-2-3 (citations omitted).
The United States Supreme Court has recognized that a different standard applies to offenses that do not originate in the common law (which historically required mens rea), that are essentially regulatory, and that are designed to protect the public welfare. Morissette v. United States, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952).
"[Public welfare offenses] do not fit neatly into any of such accepted classifications of common-law offenses, such as those against the state, the person, property, or public morals. Many of these offenses are not in the nature of positive aggressions or invasions, with which the common law so often dealt, *1064 but are in the nature of neglect where the law requires care, or inaction where it imposes a duty. Many violations of such regulations result in no direct or immediate injury to person or property but merely create the danger or probability of it which the law seeks to minimize. While such offenses do not threaten the security of the state in the manner of treason, they may be regarded as offenses against its authority, for their occurrence impairs the efficiency of controls deemed essential to the social order as presently constituted. In this respect, whatever the intent of the violator, the injury is the same, and the consequences are injurious or not according to fortuity. Hence, legislation applicable to such offenses, as a matter of policy, does not specify intent as a necessary element. The accused, if he does not will the violation, usually is in a position to prevent it with no more care than society might reasonably expect and no more exertion than it might reasonably exact from one who assumed his responsibilities. Also, penalties commonly are relatively small, and conviction does no grave damage to an offender's reputation. Under such considerations, courts have turned to construing statutes and regulations which make no mention of intent as dispensing with it and holding that the guilty act alone makes out the crime. This has not, however, been without expressions of misgiving."
Morissette, 342 U.S. at 255-56, 72 S.Ct. at 246, 96 L.Ed. at 296-97.
In Walker, supra, 356 So.2d 672, the Alabama Supreme Court noted:
"It has become common to impose strict criminal liability in connection with a variety of regulatory statutes for violation of what are commonly called `public welfare offenses.' Perkins, Criminal Law, 2d Ed., Ch. 7, Strict Liability (1969); Hall, General Principles of Criminal Law, 2d Ed., Ch. 10, Strict Liability (1960). The regulatory statutes encompass such fields as:
"`... (1) illegal sales of liquor; (2) sales of impure food or drugs; (3) sales of misbranded articles; (4) criminal nuisance; (5) traffic regulations; (6) motor vehicle laws; and (7) violations of general regulations, passed for the safety, health or well-being of the community.' Perkins, supra, at 802.
"Although it may be difficult to ascertain common features in the public welfare offenses, one author has made the following generalizations:
"`... First, many of the enactments apply not to the general public but only to certain traders, particularly to suppliers of food or drugs and vendors of alcoholic beverages. Others, having more general application as to potential offenders, are restricted to very few activitiesthe operation of automobiles, safety of highways, hunting, fishing, and various health measures. Next, many of these regulations and the conditions of conforming to them presuppose a continuous activity, such as carrying on a business.... Third, the public welfare enactments are relatively new. They represent relatively recent adaptations to an intricate economy, including an impersonal market.... [F]ourth, the modern regulations are not strongly supported by the mores. Their occurrence does not arouse the resentment directed as the perpetrators of traditional crimes.... The above common attributes of large segments of the minor offenses which are subjected to strict liability indicate that this law was constructed to meet new, important social problems....' Hall, General Principles of Criminal Law, 2d Ed., supra, at 330-331."
356 So.2d at 673. This court has stated:
"`Generally speaking, when an act is prohibited and made punishable by statute only, the statute is to be construed *1065 in the light of the common law and the existence of a criminal intent is to be regarded as essential, even when in terms not required. The Legislature, however, may forbid the doing of an act and make its commission criminal without regard to the intent or knowledge of the doer, and, if such legislative intention appears, the courts must give it effect, although the intent of the doer may have been innocent. This rule has been generally, though not quite universally, applied to the enforcement of statutes passed in aid of the police power of the state where the word "knowingly" or other apt words are not employed to indicate that knowledge is an essential element of the crime charged. The doing of the inhibited act constitutes the crime, and the moral turpitude or purity of the motive by which it was prompted and knowledge or ignorance of its criminal character are immaterial circumstances on the question of guilt.' Smith v. State, 223 Ala. 346, 347, 136 So. 270 (1931).
"Generally see, Walker v. State, 356 So.2d 672 (Ala.1977); LaFave and Scott, Handbook on Criminal Law, Section 31 (1972); Perkins, Criminal Law 812-815 (2nd ed.1969); Sayre, Public Welfare Offenses, 33 Colum.L.Rev. 55, 84-88 (1933).
"`A statute may simply provide that whoever does (or omits to do) so-and-so, or whoever brings about such-and-such a result, is guilty of a crime, setting forth the punishment.... Often this statutory crime has been created in order to help the prosecution cope with a situation wherein intention, knowledge, recklessness or negligence is hard to prove, making convictions difficult to obtain unless the fault element is omitted.' Lafave at 218."
State v. Spurlock, 393 So.2d 1052, 1057-58 (Ala.Cr.App.1981).
We find that the offense defined in § 9-11-244 meets the requirements for a public welfare, or strict liability, offense. The statute does not designate a culpable mental state for the offense of hunting over a baited field. The clear intent of the statute is to prohibit the taking, catching, or killing of protected birds or animals that are lured to an area by bait, and violating the statute requires no proof of a connection of the offender with the bait. The offense does not have its origins in the common law; it is essentially regulatory; and it is restricted to a particular activity hunting. The punishment provided for violating the statute is not severe, see § 9-11-246, Ala.Code 1975. If it were not a strict liability offense, the statute would be difficult to enforce.
We note that the language of § 9-11-244 is similar to that of the Migratory Bird Treaty Act, 16 U.S.C. §§ 703 et seq., the federal anti-baiting statute, which prohibits the hunting of migratory birds on or over any baited area.' See 50 C.F.R. §§ 20.21 et seq. The majority of federal circuit and district courts called upon to interpret the federal statute have held that hunting over a baited field is a strict liability offense. See, e.g., United States v. FMC Corporation, 572 F.2d 902 (2d Cir. 1978); United States v. Engler, 806 F.2d 425 (3d Cir.1986), cert. denied, 481 U.S. 1019, 107 S.Ct. 1900, 95 L.Ed.2d 506 (1987); United States v. Chandler, 753 F.2d 360 (4th Cir.1985); United States v. Catlett, 747 F.2d 1102 (6th Cir.1984), cert. denied, 471 U.S. 1074, 105 S.Ct. 2153, 85 L.Ed.2d 509 (1985); United States v. Van Fossan, 899 F.2d 636 (7th Cir.1990); United States v. Manning, 787 F.2d 431 (8th Cir.1986); and United States v. Wood, 437 F.2d 91 (9th Cir.1971). But see United States v. Sylvester, 848 F.2d 520 (5th Cir. 1988); and United States v. Delahoussaye, 573 F.2d 910 (5th Cir.1978).
Phillips cites this court's opinion in Rogers v. State, 491 So.2d 987 (Ala.Cr.App. 1985), as authority for the proposition that hunting over a baited field is not a strict *1066 liability offense. He notes that the statute under consideration in Rogers, § 9-11-235, Ala.Code 1975, prohibits night hunting and is similar in language to § 9-11-244. He maintains that some intent apparently is required to violate the night-hunting statute because this court refers in Rogers to evidence indicative of the defendant's guilty intent. However, this court specifically sets out in Rogers the elements of the offense of night hunting, and knowledge or intent is not included. The statements in Rogers noted by Phillips are dicta and do not establish that a violation of the night-hunting statute requires mental culpability.
Because we conclude that the legislature in enacting § 9-11-244 intended that hunting over a baited field be a strict liability offense, we hold that the trial court did not err in treating the offense accordingly and that the trial court properly refused Phillips's requested jury charges concerning the culpable mental state for the offense. Although we recognize that the statute may place certain subjectively "innocent" hunters in a precarious position, for this court to supply an element of mental culpability to the offense, where there is a clear legislative intent that none be required, would be to engage in judicial legislating. We acknowledge that the statute may effect a harsh result; however, it is for the legislature to establish and change the policy here. The trial court's judgment is affirmed.
AFFIRMED.
McMILLAN, COBB, and BROWN, JJ., concur.
BASCHAB, J. concurs specially with opinion.
BASCHAB, Judge, concurring specially.
Although I agree with the majority opinion, I feel compelled to concur specially to address my concerns about the "hunting-over-a-baited-field" statute. As the majority notes, certain "innocent" hunters may be placed in a precarious position by the statute. Therefore, I encourage the legislature to re-examine the statute carefully and to decide whether it truly intended for hunting over a baited field to be a strict liability offense. If it did not, the legislature should rewrite the statute to include specific language designating the culpable mental state required for the offense.