W. A. Phillips was charged with hunting over a baited field, in violation of § 9-11-244, Ala. Code 1975. At trial, Phillips denied having any knowledge that the field in which he was hunting was baited. The trial court, over Phillips's objection, held that hunting over a baited field is a strict-liability offense. The trial court then instructed the jury that if Phillips had hunted over a baited field he could be found guilty even without proof that he baited the field or even knew that it was baited. The jury found Phillips guilty, and he appealed. The Court of Criminal Appeals affirmed Phillips's conviction, stating that hunting over a baited field is a "public-welfare offense" that requires no culpable mental state. Phillips v. State,771 So.2d 1061 (Ala.Crim.App. 1998).
Section 9-11-244, Ala. Code 1975, provides:
 "No person at any time shall take, catch, kill or attempt to take, catch or kill any bird or animal protected by law or regulation of the State of Alabama by means, aid or use, directly or indirectly, of any bait such as shelled, shucked or unshucked corn or of wheat or other grain, salt or any other feed whatsoever that has been so deposited, placed, distributed or scattered as to constitute for such birds or animals a lure, attraction or enticement to, on or over the area where such hunter or hunters are attempting to kill or take them; provided, that such birds or animals may be taken under properly shocked corn and standing crops of corn, wheat or other grain or feed and provided further, migratory birds may be hunted under the most recent provisions established by the U.S. Fish and Wildlife Service or regulations promulgated by the Commissioner of the Department of Conservation and Natural Resources within the limits of the federal regulations."
Section 9-11-244 does not set out a culpable mental state. The Court of Criminal Appeals, relying on Morissette v. United States, 342 U.S. 246
(1952), and Walker v. State, 356 So.2d 672 (Ala. 1977), held:
 "[T]he offense defined in § 9-11-244 meets the requirements for a public welfare, or strict liability, offense. The statute does not designate a culpable mental state for the offense of hunting over a baited field. The clear intent of the statute is to prohibit the taking, catching, or killing of protected birds or animals that are lured to an area by bait, and violating the statute requires no proof of a connection of the offender with the bait. The offense does not have its origins in the common law; it is essentially regulatory; and it is restricted to a particular activity — hunting. The punishment provided for violating the statute is not severe, see § 9-11-246, Ala. Code 1975. If it were not a strict liability offense, the statute would be difficult to enforce."
771 So.2d at 1065. Section 9-11-244 does not designate a culpable mental state, and the intent of the statute is clearly to prohibit the taking or killing of protected birds or other animals lured to an area by bait. However, the punishment for violating § 9-11-244
is not insignificant. Nor *Page 1068 
would the requirement of a culpable mental state render the statute unenforceable.
Traditionally, public-welfare offenses do not result in "grave damage to an offender's reputation." The State argues that "a conviction for hunting over bait is no more abhorrent than a conviction for a traffic violation." The state's analogy is too broad. Traffic violations come in all shapes and sizes. For example, a traffic citation for illegal parking rarely, if ever, damages the reputation of the offender. However, a citation for reckless driving or driving under the influence does damage the reputation of the offender. Hunting over a baited field has the potential to damage the reputation of the offender, because it carries the potential of jail time. A second conviction under §9-11-244 can result in a fine and up to six months of jail time. §9-11-246, Ala. Code 1975. Anytime an offender must serve a jail sentence, his reputation is invariably damaged. Thus, hunting over a baited field is not as benign an offense as illegal parking.
The Court of Criminal Appeals stated, and the State argues here, that if § 9-11-244 were held not to state a strict-liability offense, then the statute would be difficult to enforce. However, requiring some level of mental culpability would not render the statute any more difficult to enforce than any other statute. The language of § 9-11-244 is very similar to the language in the Migratory Bird Treaty Act,16 U.S.C. § 703 et seq. The Migratory Bird Treaty Act also seeks to prevent the taking of protected birds over a baited field and, like §9-11-244, it does not set out a culpable mental state. The United States Court of Appeals for the Fifth Circuit, in United States v.Delahoussaye, 573 F.2d 910 (5th Cir. 1978), resolved the same issue that is now before this Court. Even though the Migratory Bird Treaty Act does not set out a level of mental culpability required for a person to be found guilty of violating that Act, the Fifth Circuit Court of Appeals held:
 "We also conclude that [at] a minimum the bait or the callers must have been so situated that their presence could reasonably have been ascertained by a hunter properly wishing to check the area of his activity for illegal devices. There could be no justice for example, in convicting one who was barred by a property line from ascertaining that birds were being pulled over him by bait or callers hidden from his view, and we decline to impute such an intent to the regulations. . . . [S]tanding crops attract game quite as well as bait does, and hunting over standing crops is expressly permitted. . . . If the hunter cannot tell which is the means next door that is pulling birds over him, he cannot justly be penalized. Any other interpretation would simply render criminal conviction an unavoidable occasional consequence of duck hunting and deny the sport to those such as, say, judges who might find such a consequence unacceptable. On the other hand, to require a higher form of scienter — actual guilty knowledge — would render the regulations very hard to enforce and would remove all incentive for the hunter to clear the area, a precaution which can reasonably be required."
573 F.2d at 912. Requiring, for one to be convicted of violating § 9-11-244, that he either knew or should have known that the area over which he was hunting was baited does not render § 9-11-244
unenforceable. Requiring such a low level of mental culpability simply requires the State to prove that with reasonable investigation the hunter could have discovered the bait. The imposition of a low-level standard of mental culpability also protects a hunter who performed the necessary investigation, but was unable to detect the presence of bait, perhaps because he was barred by a property line. Imposing a low level of mental culpability also protects the spirit and intent of the statute, to prevent the taking or killing of protected birds or animals lured to an area by bait. *Page 1069 
Furthermore, this Court is not overstepping its bounds by declining to interpret § 9-11-244 as a strict-liability statute. Section 13A-2-4(b), Ala. Code 1975, states:
 "Although no culpable mental state is expressly designated in a statute defining an offense, an appropriate culpable mental state may nevertheless be required for the commission of that offense, or with respect to some or all of the material elements thereof, if the proscribed conduct necessarily involves such culpable mental state. A statute defining a crime, unless clearly indicating a legislative intent to impose strict liability, states a crime of mental culpability."
(Emphasis added.) The commentary to § 13A-2-4 states: "Subsection (b) explicitly states a policy adverse to arbitrary use of `strict liability' concepts. An express statement is required in the statute defining the offense if strict liability is being imposed." The State argues that § 13A-2-4 should not apply to § 9-11-244 because § 9-11-244 was enacted in 1951 and § 13A-2-4 was enacted in 1977. However, the Legislature revised § 9-11-244 in 1991. If the Legislature had intended § 9-11-244 to state a strict-liability offense, it could have added an express statement to that effect in 1991. The Legislature did not add such an express statement. Therefore, we must assume that the Legislature was aware of § 13A-2-4, when it revised § 9-11-244, and chose not to make the offense a strict-liability offense. In the absence of an express statement by the Legislature indicating an intent to make hunting over a baited field a strict-liability offense, we decline to make a criminal conviction resulting in up to six months' jail time "an unavoidable occasional consequence of . . . hunting." Delahoussaye, 573 F.2d at 912.
Because we conclude that a conviction under § 9-11-244 requires a showing that the defendant either knew or should have known that the area over which he was hunting was baited, the trial court erred in instructing the jury that Phillips could be found guilty even without proof that he baited the field or knew that the field was baited. Therefore, we remand this case for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
Hooper, C.J., and Maddox, Houston, See, Lyons, Johnstone, and England, JJ., concur
Brown, J., recuses herself.*
* Justice Brown was a member of the Court of Criminal Appeals when that court considered this case.