B.T. Reid's conviction of theft of property in the first degree was affirmed by the Court of Criminal Appeals, 474 So.2d 148
(Ala.Cr.App. 1984). We granted certiorari to review the issue whether the trial court's disallowing certain testimony was reversible error. We find that it was. Therefore, we reverse.
A brief recitation of the pertinent facts is necessary to this Court's treatment of the narrow evidentiary issue presented.
In October 1980, B.T. Reid sold the assets of his construction company (including heavy equipment) to a company known as Celco. Celco, in turn, leased the equipment back to Reid. Reid had, in past years, made equipment purchases from Berco Supply Company. On August 20, 1981, Reid and Charlie Berzett (store manager for Berco) arranged for Reid to purchase undercarriages for the six crawler tractors which Reid was leasing from Celco and using on various state and municipal jobs.
Reid and Berzett discussed payment for the parts, and Berzett agreed to accept a signed, post-dated, but otherwise blank check, knowing that the check was not valid when issued. Berzett testified that Reid said he had made arrangements at his bank to borrow the money when the jobs were completed and that Reid assured Berzett that the money would be available to pay for all the parts with that one check. The parts were delivered on August 21, 1981, and the Berco delivery person picked up Reid's signed blank check which had been post-dated to September 12, 1981.
On September 19, 1981, Reid requested a duplicate set of invoices for the equipment. The evidence is in dispute as to why these invoices were requested. Reid testified that the bonding companies that took over his failing business needed the invoices to assign the specific amounts due to the various jobs on which the equipment had been used. Berzett testified that Reid told him he needed the invoices for a loan application at a bank. A bank officer was allowed to testify that Reid had neither applied for nor been given a loan to cover the Berco indebtedness. The trial court, however, excluded all evidence regarding the activities of the bonding companies, including the proffered testimony of a bonding company officer who had dealt with Reid. *Page 153 
Reid informed Berzett several times that there was not sufficient money in his account to cover the check and that he was still waiting for payment checks from his state and municipal jobs. Berzett ascertained this same information from the bank on the day he had Reid's check filled in and presented for payment. The check, for $42,686.58, was dishonored because of insufficient funds.
The Court of Criminal Appeals, in its opinion, stated that the "subsequent takeover of [Reid's] failing business by the bonding companies did not bear upon the issue [of Reid's intent]; on the contrary, admission of this evidence would quite properly have been confusing to the jury, given the complex nature of the facts of this case." Furthermore, says Respondent, "the subsequent takeover of [Reid's] failing business can hardly be deemed a valid defense to the crime he committed." We disagree.
To be sure, as an element of the crime charged, the State's burden is to prove that the requisite intent existed at the time the check was presented by the payor and accepted by the payee in return for the goods. Intent is difficult to prove, however, and must be inferred from the totality of the facts and circumstances developed by the evidence of the case. Hindsv. State, 423 So.2d 1382 (Ala.Crim.App. 1982). "When," as here, "a material element of a crime is the fraudulent intent of the accused, both the State and the accused are allowed broad scope in introducing evidence with even the slightest tendency to establish or negate such intent. . . ." Cottonreeder v. State,389 So.2d 1169, 1174 (Ala.Crim.App. 1980). The evidence of collateral conduct which would be deemed admissible under this principle "is ordinarily produced for the purpose of showing criminal or fraudulent intent, [but] may with equal logic be offered to show the lack of such intent." Gard, Jones onEvidence — Civil and Criminal, Vol. 1, § 4:13 (6th ed. 1972).
Here, because of the nature of the crime with which Reid was charged, proof of Reid's innocence or guilt necessarily includes evidence of events subsequent to the time Reid's blank check was delivered to Berco. Where, as here, the gravamen of the offense charged consists in Reid's misrepresentation that he would make the worthless check valid at a subsequent time, then, any evidence of subsequent events bearing on Reid's intent to defraud at the time he represented that the worthless check would be made good is of probative value to the factfinder in testing the State's burden to prove its case.
Similarly, evidence as to the subsequent ability or inability of Reid to meet the obligation imposed by the delivery of the check, as well as evidence as to the cause of Reid's ability or inability to cover the check, are, unquestionably, of probative value. Indeed, evidence of any subsequent circumstances would be both relevant and material as to the issue whether, at the time he delivered the blank check to Berco, Reid intended to commit theft by fraud and, therefore, should have been admitted into evidence.
The jury was permitted to hear testimony that both Reid and Berzett knew the check to be worthless when delivered and, thereafter, that Reid and Berzett had differing accounts as to the reason Reid gave for requesting the duplicate set of invoices, and that the bank had no record of Reid's obtaining (or even applying for) a loan to cover Reid's indebtedness to Berco. However, because of the trial court's fear for the possibility of confusing the jury in an already complex case, Reid was not allowed to bring before the jury those collateral circumstances from which the factfinder could have drawn inferences of a lack of criminal intent. The testimony of the bonding company officer, and testimony with regard to any other material activities of the bonding companies, should have been admitted at trial. Evidence of the intervention of the bonding companies in Reid's failing business and the preemption of control by the bonding companies, effectively precluding Reid's further management of the affairs of the business, was *Page 154 
material to the issues at trial (particularly the requisite element of Reid's intent to defraud), and, therefore, was admissible.
For the error noted, the decision of the Court of Criminal Appeals is reversed and this cause is remanded for an order reversing the judgment of conviction and sentence and remanding the cause to the circuit court for a new trial.
REVERSED AND REMANDED.
TORBERT, C.J., and MADDOX, FAULKNER, SHORES, EMBRY, BEATTY and ADAMS, JJ., concur.