Robby Swinney was indicted for theft in the first degree in violation of § 13A-8-3 (a), Code of Alabama 1975 as amended. The jury found the appellant "guilty as charged in the indictment" and the trial judge sentenced him to ten years' imprisonment in the penitentiary. The appellant's application for probation had not been ruled upon by the trial court at the time this appeal was filed with this court.
Leburn Hudson testified that he farms soybeans and wheat. He stated that he had contracted with S R Farm Service Corporation (hereinafter referred to as S R) for storage of his crops at various times from 1975 through 1981.
The appellant was a part owner (1/3 interest) in S R during this period of time. Hudson would pay for storage services and S R would sell the crops when Hudson gave his authorization to do so. In June, 1981, Hudson took 3484.39 bushels of wheat to S R for storage. Hudson stated that he also took 611.82 bushels of soybeans to S R for storage in October and possibly early November, 1981.
On January 19, 1982, Hudson told the appellant that he wished to sell his crops. The appellant replied that his crops had already been sold and were gone. He insisted that he would get Hudson his money. He never told Hudson that the bank had foreclosed on S R and had taken his crops in this foreclosure.
A few days later Hudson went to the home of Doris Rye who was also a part owner of S R. Doris Rye gave Hudson a check for his crops. Hudson then took the check to the Farmers Home Administration which held a mortgage interest on his crops.
Hudson was notified by the FHA a few days later that the check which Rye gave had been returned because of non-payment.
Henry Grissom testified that around the first of November, 1981, he heard Swinney, the appellant, tell Hudson he could store some soybeans for him. Grissom had taken some beans for Hudson to S R sometime around the first of October. In the middle of December, 1981, Grissom noticed that the bin at S R where he had put Hudson's soybeans was empty.
Doris Rye testified that she did the bookkeeping for S R. She wrote the checks, paid the bills and kept a ledger of how much, in the way of crops, each farmer had stored with S R. She stated that S R had nine bins in which they stored crops.
Rye stated that Hudson had been doing business with S R since 1975. Her records show that Hudson brought in his wheat for storage from June 10 through the 18th of 1981. The soybeans were brought in on October 7 and again on October 10, 1981. *Page 1328 
On December 14, 1981, Rye gave Hudson a piece of paper stating that he had 3484 bushels of wheat and soybeans stored at S R. He told her he needed this to report to the FHA.
In January, 1982, Hudson came to Rye's house and told her that Robby Swinney said to write Hudson a check. She told Hudson that S R did not have the money to pay him. Hudson replied that he had to make some showing to the FHA, that he was trying to collect his money so he could make his payment to them.
Rye testified that S R did not have any money in the bank because they had extended credit to a lot of farmers and they were unable to pay because there had been "two bad crop years."
Around the first of October, the Hodges branch of the Citizens' Bank of Russellville attached the personal bank accounts of the owners of the business accounts of S R. Sometime in the middle of December, 1981 Citizen's Bank seized all of the wheat which S R had and some of their equipment. Marion County Banking Company seized the soybeans, their accounts receivable and the rest of S R's assets.
Rye testified at great length as to how S R operated. She stated that the appellant ran the day to day operations of the business. Rye said, to her knowledge, the appellant did not sell Hudson's or anyone else's crops. She said she would have a record of it.
An attempt to collect the debts owed to S R was made but was unsuccessful. The business closed in December, 1981.
Dan Hindman testified that he was the branch manager of Citizen's Bank at Hodges during 1981. In March, 1981, S R took out a loan with the bank. The loan was an open-ended credit agreement. S R would purchase wheat from farmers with money lent by Citizens Bank. When S R would resell the wheat the bank would get repaid. The bank held a security interest in the wheat before it was resold.
In September, 1981, S R was in default on the loan. The bank attached the accounts of the owners and S R. Sometime in October, November or December, 1981, Hindman talked to the appellant about seizing the wheat in which they had a security interest. In December, 1981 or January, 1982, the bank got all of the wheat that S R had, i.e., approximately 5000 bushels. Hindman said the bank had a security interest in 10,000 or 11,000 bushels, but only 5000 bushels were at S R when this wheat was picked up. At this time, Hindman did not see any more wheat or soybeans in the bins at S R.
Kenneth Vickery testified that Hudson told him that he did not want to press charges against the appellant, Swinney, but that he had to because the FHA was pressuring him.
The appellant testified that, when farmers brought in their crops, they would either sell them immediately or would store them and sell later. At times when farmers wanted to sell their crops, S R would buy them and sell them later.
Hudson stored wheat and soybeans with S R. When the check to Hudson was returned the appellant, Swinney, asked Hudson to be patient. He told Hudson that he had large accounts receivable and that he was waiting on a loan to come through. The appellant promised payment when he received the loan.
Hudson told the appellant that he realized they were both in a bind but that he had a note with the FHA on which he had to make a payment.
The appellant testified that the loan did not go through and all of the assets of S R were seized including all of the wheat and soybeans that he had. He stated that Citizens Bank got 7500 bushels of wheat.
The appellant testified that farmers would contract through S R to deliver a certain amount of their crops. When they didn't deliver S R would have to honor their contracts to other buyers. He explained this was the reason for the deficit between what they had on hand at S R and what they were supposed to have in inventory.
Swinney stated he never told Hudson that S R had sold his crops. The appellant *Page 1329 
said that he never sold any crops that had not been paid for by S R.
E.D. Shackleford testified that he stored wheat with S R in the summer of 1981. In September he received a check from S R for his wheat and it, too, was returned for non-payment. When Shackleford went and talked to the appellant about the check, the appellant told him to get soybeans from S R's bins to replace his wheat. Shackleford did this on October 20, 1981. When he obtained the soybeans he did not see any wheat in the two bins in which he looked.
 I
The indictment in this case states that the appellant ". . . did knowingly obtain, by deception, control over 3,484.39 Bushels of Wheat of the value of $10,453.17 and 611.82 Bushels of Soybeans of the value of $3,670.92, the property of Leburn Hudson, with the intent to deprive the owner of said property . . ." (R. 1). This is in conformance with § 13A-8-2 (2), Code of Alabama 1975.
The appellant contends the State failed to prove that he obtained control of the wheat and soybeans by deception. The State asserts that ". . . the facts show that the defendant deceived Mr. Leburn Hudson into placing his grain for storage with the defendant." (Appellee's brief, p. 7). The State points out no evidence from the trial record in support of this assertion and we can find none in this record.
"Deception occurs when a person knowingly:
 "a. Creates or confirms another's impression which is false and which the defendant does not believe to be true; or
 "b. Fails to correct a false impression which the defendant previously has created or confirmed; or
 "c. Fails to correct a false impression which the defendant is under a duty to do so; or
 "d. Prevents another from acquiring information pertinent to the disposition of the property involved; or
 "e. Sells or otherwise transfers or encumbers property, failing to disclose a lien, adverse claim or other legal impediment to the enjoyment of the property when the defendant is under a duty to do so, whether that impediment is or is not valid, or is not a matter of official record; or
 "f. Promises performance which the defendant does not intend to perform or knows will not be performed. Failure to perform, standing alone, however, is not proof that the defendant did not intend to perform.
 "The term `deception' does not, however, include falsity as to matters having no pecuniary significance, or puffing by statements unlikely to deceive ordinary persons. `Puffing' means an exaggerated commendation of wares or services."
Ala. Code, § 13A-8-1 (1) (1975).
Hudson brought his wheat to S R for storage during the month of June, 1981. The soybeans were placed in storage with S R during October, 1981. Hudson had stored crops with S R since 1975 and had always gotten paid previously for such crops. He brought the wheat and soybeans in for storage in 1981 as he normally did.
There is absolutely no evidence that the appellant deceived [as defined by § 13A-8-1 (1)] Hudson into placing his wheat into storage in June, 1981. The only possible evidence of deception was that the appellant, Swinney, knew he was in default on his loan in September of 1981. This was before Hudson brought in his soybeans to S R for storage in October, 1981. However, the mere fact that the appellant knew he was having financial problems and did not tell Hudson does not amount to deception as defined by the Alabama Code.
The State contends the appellant deceived Hudson by promising performance which he, Swinney, did not intend to perform or which he knew would not, or could not, be performed. While intent is a question for the jury, there must be some evidence of that intent. "Failure to perform, standing alone, however, is not proof that the defendant did not intend to perform." Ala. Code § 13A-8-1 (1)(f) (1975). See also Andersen v. State,418 So.2d 967 (Ala.Crim.App. 1982). *Page 1330 
It is entirely likely that, when the appellant obtained control of Hudson's wheat and later his soybeans, he intended to store the crops until Hudson was ready to sell same and pay Hudson for them when he did consummate the actual sale. This is especially true in light of the past dealings between these two parties.
The State failed to prove that the appellant "knowingly obtained by deception" the control over Hudson's wheat and later the soybeans with the necessary intent to deprive Hudson of his crops, as charged in the indictment.
The evidence was sufficient to show that the appellant did exert "unauthorized control" over the property of Hudson with the intent to deprive Hudson of that property as provided in §13A-8-2 (1), Code of Alabama 1975. However, this was not the charge as laid in the indictment in this cause.
Therefore, this cause must be reversed and rendered due to the insufficiency of the evidence to sustain the charge. Other assignments of error are therefore pretermitted.
REVERSED AND RENDERED.
All the Judges concur.