BOWEN, Presiding Judge.
Vernon Cooley Evans was convicted of theft of property in the first degree, given a two-year suspended sentence, and placed on probation. On appeal, he claims that the State failed to prove a prima facie case of theft by deception against him. We agree.
Evans, an employee of the Alabama Department of Corrections, was supervisor of the abattoir, or slaughterhouse, at Draper Prison from June 1983 through November 1984. He was responsible for receiving meat at the prison, inspecting it for wholesomeness, and seeing that it met State bid specifications. The specifications at issue here called for “U.S.D.A. Good beef forequarters, 145 pounds and over.”
Swift Independent Packing Company was awarded the State contract to deliver *1206 U.S.D.A. “Good” beef forequarters to Draper Prison. Paul Saulter, Swift’s product manager and Evans's co-defendant, handled the prison meat account. Swift supplied the prison order by buying beef forequarters through Meyners-Robinson, an Atlanta meat brokerage firm which actually purchased the meat from Kaplan Industries, a Florida packing company.
In November of 1984, following notification by prison officials that the Swift meat was ungraded and did not meet contract specifications, the State attorney general’s office conducted an investigation. Swift, Saulter, and the defendant were subsequently indicted for theft by deception. The indictments alleged, in substance, that Swift, through its agent Saulter, had charged the State for U.S.D.A.-graded “Good” meat but had knowingly supplied an inferior ungraded product with intent to deprive the State of the difference in value. Swift was not prosecuted after it reached a financial settlement with the State. Evans and Saulter were tried jointly, the State proceeding on the theory that Evans was guilty of aiding and abetting Saulter’s deception by not rejecting Swift’s beef and by not reporting to his superiors Swift’s noncompliance with the contract.
In an effort to prove Saulter’s motive to defraud the State, the prosecution introduced evidence that Saulter made “incentive bonuses” from Swift based on the dollar volume of meat he sold and, inferentially, that he earned greater bonuses because he charged the State a higher price for meat than the quality of the beef warranted. The prosecution’s theory of Evans’s motive to aid Saulter in the fraud was based on the fact that Evans received several gratuities from Saulter in the form of sausages, spareribs, a ham, and wieners for a church youth group outing. Evans also accompanied Saulter on a few hunting trips. The evidence of motive was conflicting, with Saulter’s attorney attempting to show that his client would have earned incentive bonuses even without the prison account, and Evans’s lawyer demonstrating that product gratuities were common among those who dealt with meat industry representatives, including at least three State’s witnesses who received similar gifts of meat from Swift. Neither Saulter nor Evans testified.
It was undisputed at trial that the beef sent to Draper Prison during the period in question was ungraded and, in fact, did not meet contract specifications. It was also undisputed that both Saulter and Evans knew the beef was ungraded. What was disputed — and protractedly so — was whether the beef delivered by Swift, though not U.S.D.A. “Good,” was an equivalent quality ungraded product.
Both the State and the defense presented voluminous testimony on the actual quality of the meat, with the State’s witnesses contending that the ungraded meat was “canner and cutter” quality — an inferior grade, and the defense claiming that the meat, though ungraded, was “Top No-Roll,” allegedly the quality and cost equivalent of U.S.D.A. “Good,” but without the grade stamp or purple ink mark rolled on the meat. The evidence on this point was in conflict and, had the State otherwise presented a prima facie case, would have been a proper question for the jury to resolve.
The State, however, did not present a prima facie case of theft by deception — regardless of the actual quality of the meat received — because it did not prove that Saulter intended to deprive the State of anything, and, therefore, failed to prove that any criminal offense was committed.
“A person commits the crime of theft of property if he: (2) [kjnowingly obtains by deception control over the property of another, with intent to deprive the owner of his property.” Ala.Code 1975, § 13A-8-2. Because Evans never “obtain[ed] control over the property” of the State of Alabama, he was guilty of theft by deception, if at all, only by virtue of “accessorial liability” as set out in § 13A-2-23, Code of Alabama 1975. See Ala.Code 1975, § 13A-2-23 (Commentary at 39). That section provides the following:
“A person is legally accountable for the behavior of another constituting a criminal offense if, with the intent to *1207 promote or assist the commission of the offense:
“(1) He procures, induces or causes such other person to commit the offense; or
“(2) He aids or abets such other person in committing the offense; or
“(3) Having a legal duty to prevent the commission of the offense, he fails to make an effort he is legally required to make.”
Subsection (1) has no application here. It “imposes liability in the situation where the defendant is the party who instigates or starts the complicitous conduct.” Ala.Code § 13A-2-23 (1975) (Commentary at 41). The State presented no evidence that Evans instigated the delivery or receipt of ungraded beef at Draper Prison. In fact, the State’s evidence showed that ungraded beef had been delivered to the prison since 1981 (before Evans was employed by the Department of Corrections in 1983), and was accepted by Evans’s predecessor. The prosecution also introduced a statement in which Evans acknowledged that early in his tenure as abattoir supervisor he noticed that the meat delivered by Swift to the prison was ungraded. Evans called the matter to Saulter’s attention and Saulter replied that it had always been that way or that it had been accepted in the past.
Subsection (2) embodies the State’s theory of Evans’s liability and the jury was charged on the principles of “aiding and abetting.” It is hornbook law that one cannot be convicted of aiding and abetting the perpetrator of a crime unless it is first shown that a crime has actually been committed by another. W. LaFave & A. Scott, Handbook on Criminal Law § 65 (1972); R. Perkins & R. Boyce, Criminal Law Ch. 6 § 8 (3d ed. 1982). See McMahan v. State, 168 Ala. 70, 53 So. 89, 91 (1910). “[T]he guilt of the principal must be established at the trial of the accomplice as a part of the proof on the charge against the accomplice. If the acts of the principal in the first degree are found not to be criminal, then the accomplice may not be convicted.” W. LaFave at 517. See United States v. Azadian, 436 F.2d 81 (9th Cir.1971); State v. Haines, 51 La.Ann. 731, 25 So. 372 (1899); State v. Hayes, 105 Mo. 76, 16 S.W. 514 (1891). For one to be convicted as an aider and abettor, evidence showing an offense to have been committed by a principal is necessary, although it is not required that the principal be convicted or even his identity established. United States v. Merriwether, 329 F.Supp. 1156, 1160 (S.D.Ala.1971), affirmed, 469 F.2d 1406 (5th Cir.1972).
“If there is no evidence of defendant’s guilt except on the theory that he caused a crime to be committed by another (whether by incitement or abetment), it will obviously be necessary for the prosecution to prove the crime was actually committed by another, and this must be established with the same certainty as if the perpetrator himself were on trial.” Perkins, at 762. Consequently, Evans could not have been guilty of aiding and abetting Saulter in a theft unless the State first proved that Saulter actually committed a theft. This the State failed to establish.
Although Saulter may have practiced “deception” upon the State of Alabama as that term is defined in § 13A-8-1(1), Code of Alabama 1975, the offense of theft by deception requires the additional element of an “intent to deprive the owner of his property.” Ala.Code 1975, § 13A-8-2(2). There was ample proof tending to show that Saulter engaged in conduct which met one or all of the following statutory definitions of “deception:”
“(1) DECEPTION occurs when a person knowingly:
“(a) Creates or confirms another’s impression which is false and which the defendant does not believe to be true; or
“(b) Fails to correct a false impression which the defendant previously has created or confirmed; or
“(c) Fails to correct a false impression when the defendant is under a duty to do so; or
“(d) Prevents another from acquiring information pertinent to the disposition of the property involved; .... ”
Saulter contracted with the State to provide U.S.D.A. “Good” beef forequarters. *1208 His invoices to the State reflected that he was supplying that particular meat, yet he undisputedly did not provide, and he knew that he was not providing, what the contract specified and what his invoices reflected. Under the circumstances, Sautter deceived the State within the meaning of § 13A-8-1(1)(a)-(d). Yet, deception, unaccompanied by an intent to deprive the owner of its property, is not theft. Ala.Code 1975, § 13A-8-2(2). The prosecution presented no evidence of Sautter’s intent to deprive the State of the value of its contract, but in fact proved that he did not have that intent.
The State’s attorneys argued that Swift consistently was able to underbid its competitors and to obtain the State meat contracts because Swift’s low bid was based upon the cost of supplying an inferior product while its competitors’ higher bids were premised upon supplying the contractually-specified product. The State, however, presented absolutely no evidence to support this argument. In fact, the State’s evidence proved just the opposite. That evidence showed that Swift, with Sautter acting as its agent, was charged by its supplier, the price of U.S.D.A. “Good” beef.
A representative of Meyners-Robinson, the meat broker with whom Sautter dealt in purchasing beef for the prison contract, testified that Sautter ordered U.S.D.A. “Good” beef to fill the State contract. When the broker told Sautter that graded “Good” meat was not available from them, Sautter settled for what he and the broker considered an equivalent ungraded product. The broker then filled the order by negotiating a sale of ungraded beef from Kaplan Industries to Swift. Kaplan charged Swift the same price for the ungraded beef as the price that U.S.D.A. “Good” beef commanded and shipped the meat directly to Draper Prison. Sautter neither saw the beef nor received any complaints from prison officials about the product. Thus, while the State’s evidence conclusively proved that Sautter deceived the State and was in breach of his employer’s contract with the State, it also proved that Swift, his employer, did not profit financially by the breach. More importantly, it proved that Sautter had no knowledge that the meat ordered, paid for, and delivered to the prison was not the equivalent of the meat specified in the contract.
Under this set of circumstances, we fail to discern any evidence that Sautter had the criminal intent to deprive the State of the value of its contract. While it is possible that either Kaplan or Meyners-Robin-son may have agreed with Sautter to supply the State with inferior-quality meat, but to charge Swift the higher price for contract-quality meat, and to share with Saul-ter in the spoils of the deception, the State presented absolutely no evidence of such an under-the-table arrangement. The possibility that a thing might have occurred is not evidence, even circumstantial, that such a thing did occur. Lollar v. State, 398 So.2d 400, 402 (Ala.Cr.App.1981).
The prosecution did present evidence that, after it came to the attention of State officials that Swift had been supplying ungraded meat to the prison, Sautter insisted that Meyners-Robinson arrange to have graded meat on the next load. Six graded beef forequarters were on the rear of the next truckload of Swift-supplied meat to Draper prison. The most that can be said of this evidence is that it highlights Saul-ter’s deception of the State, but it does not prove his intent to deprive the State of what he considered contract-equivalent quality meat. The prosecution fully proved Sautter’s deception from the fact of his misrepresenting the beef as graded when it was actually ungraded. The above evidence merely emphasizes Sautter’s deception regarding the ungraded nature of the beef but it does not prove Sautter’s intent to have supplied less than what he considered an equivalent quality beef.
Thus, for purposes of the criminal prosecution of Sautter, evidence that the meat received by the State of Alabama was of a quality inferior to that called for by contract does not settle the issue of Sautter’s criminal intent. Even assuming that the State received poor quality meat, the prosecution was still required to prove Sautter knew the meat was poor in order to convict *1209 him of theft. When the prosecution’s own undisputed evidence established that Saul-ter ordered, paid for, and had no reason to believe that the State did not receive a product equivalent to contract specifications, Saulter was not shown to have had the intent to deprive the State of the value of its contract.
Although criminal intent may be inferred “from the totality of the facts and circumstances developed by the evidence of the case,” Ex parte Reid, 474 So.2d 151, 153 (Ala.1985), and the issue of whether the defendant had the intent to commit a criminal act is normally a question for the jury, McMurphy v. State, 455 So.2d 924, 928 (Ala.Cr.App.1984); Andersen v. State, 418 So.2d 967, 969 (Ala.Cr.App.1982), there must be some evidence of intent in order to submit the case to the jury, McCord v. State, 501 So.2d 520 (Ala.Cr.App.1986); Swinney v. State, 482 So.2d 1326, 1329 (Ala.Cr.App.1985). Here, the State not only presented no evidence of criminal intent on Saulter’s part, but its proof affirmatively established the lack of criminal intent. The State did prove the existence of deception and of breach of contract, but it did not prove the commission of the offense of theft by deception by Saulter.
If Saulter’s conduct constituted merely a breach of contract but not the crime of theft by deception, then Evans may have “aided and abetted” Saulter’s contractual default, but he was not guilty of criminal complicity in a theft under § 13A-2-23. Even subsection (3) of that section, which is arguably applicable to Evans’s conduct here because it imposes liability upon one who has “a legal duty to prevent the commission of the offense, [but] fails to make an effort he is legally required to make,” does not come into play unless there has been a “criminal offense” committed by “another.” Ala.Code 1975, § 13A-2-23 (“A person is legally accountable for the behavior of another constituting a criminal offense if, ... ”) (emphasis added). If Saul-ter committed no offense, Evans could not have been his accomplice.
The judgment of the circuit court is reversed because the State failed to present a prima facie case against Evans. That judgment must be rendered under the principles of Burks v. United States, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); Ex parte Beverly, 497 So.2d 519 (Ala.1986).
REVERSED AND RENDERED.
All Judges concur.