MOORE, Chief Justice.
R.J.J., W.L.C., and W.F. (hereinafter referred to collectively as “the petitioners”) were convicted in the Lowndes Circuit Court of hunting after dark, hunting from a public road, and hunting with the aid of an automobile. The Court of Criminal Appeals affirmed them convictions by an un *1155 published memorandum. W.F. v. State (No. CR-13-1188, Aug. 22, 2014), 190 So.3d 588 (Ala.Crim.App.2014)(table). We granted their petition for a writ of certio-rari to review the Court of Criminal Appeals’ decision.

I. Facts and Procedural History

On January 3, 2013, the petitioners, who were juveniles at the time, met at RJJ.’s house. They loaded groceries into a truck with the intent of taking the groceries to a hunting cabin in Lowndes County belonging to a relative of one of the petitioners. W.F. brought his new AR-15 rifle along and placed it in the backseat of the truck. According to R.J.J., he and the other two petitioners are “gun enthusiasts,” and W.F. brought the rifle along for “[sjafety and protection.” R.J.J., who has a permit to carry a concealed weapon in Alabama, testified that he carries a gun wherever he goes, including when he travels at night. He further testified that the magazine for W.F.’s rifle was on the truck’s front center console.
At approximately 6:30 or 6:45 p.m., the petitioners left RJ.J.’s house. R.J.J. drove, W.F. was in the front passenger seat, and W.L.C. was in the backseat. They intended to drop the groceries off at the cabin and then return immediately to R. J. J.’s house because R. J.J.’s parents had ordered pizza for them.
After the petitioners had driven for approximately 15 or 20 minutes, R.J.J. pulled up to a stop sign on Brown Hill Road at the intersection of Brown Hill Road and Highway 29. W.L.C. and R.J.J. testified that the truck came to a complete stop and that they waited at the stop sign to allow a car traveling south on Highway 29 to pass through the intersection before proceeding. W.L.C. testified that the windows of the truck were up at the time and that no shots were fired from the truck. Both R.J.J. and W.L.C. testified that W.F,’s rifle was not fired at any time that night.
Russell Morrow, a retired conservation and enforcement officer for the State of Alabama and a reserve deputy for the Lowndes County Sheriff’s Department, lives on Brown Hill Road. Morrow testified that the area is frequented by wildlife, including deer. After nightfall at approximately 7:00 p.m. on January 3, 2013, Morrow was standing next to his vehicle near his house. From that vantage point, he could see a truck stopped at the stop sign approximately 140 yards away. The left turn signal on the truck was engaged. Morrow could not see any individuals through the windows of the truck. Morrow testified, in contradiction to W.L.C. and R.J.J., that there was no southbound traffic on Highway 29 at the time.
Morrow testified that “the truck sat there and sat there. Then I heard two high powered rounds go off from the vehicle.” Morrow has 25 years of experience in law enforcement and testified that he was familiar with the sound of a firearm. Morrow believed, but did not know for sure, that the sounds came from the driver’s side of the truck. Morrow did not see a muzzle flash and could not see any intended target.
After he heard the shots, the truck turned left and headed south on Highway 29. Morrow got into his own vehicle and followed the truck as it traveled south on Highway 29 and then onto another road before stopping at a gate outside the hunting cabin. The petitioners got out of the truck to open the gate, and Morrow got out of his vehicle. Morrow and the petitioners provided different accounts of the conversation that ensued.
Morrow testified that he asked the petitioners “what they were shooting at” and that they denied shooting at anything. Morrow testified that one of the petitioners. “said that it was firecrackers” that Morrow had heard but that, when Morrow *1156 asked the petitioners to show him the firecrackers, the petitioners “said it wasn’t firecrackers” and acknowledged that they had a rifle in the truck.
W.L.C., however, testified that Morrow “yelled at us,” saying “that we shot something back at the stop sign or he said we shot the stop sign, shot a deer.” According to W.L.C., Morrow repeatedly stated that the petitioners had fired a weapon while the truck was stopped at the intersection, and the petitioners denied doing so. R.J.J. testified that Morrow first accused the petitioners of shooting a pistol at a stop sign, but that then Morrow “kind of changed it” and asked “where was the deer, and things of that nature.” R.J.J. testified that Morrow asked where the pistol was and that R. J.J. said that they had a rifle. W.L.C. testified that Morrow asked the petitioners if they had a gun in the vehicle and that the petitioners said that they did. Morrow told the petitioners that he was going to call the sheriffs department.
The petitioners unlocked the gate and drove up to the cabin. They locked the gate behind them to prevent Morrow from following them. From outside the gate, Morrow could see movement and “lights where they were going in and out” of the cabin, but he could not make out what the petitioners were doing. W.L.C. testified that he and the other petitioners were unloading the groceries from the truck and placing them inside the cabin. Morrow said that the petitioners remained in or around the cabin for 30 minutes.
While the petitioners were at the cabin, Morrow contacted Lowndes County Sheriff John Williams, who dispatched two deputies to the cabin. Before the deputies arrived, the petitioners pulled the truck up to the gate as if to leave. Morrow blocked the gate and told the petitioners that they could not leave until the sheriff deputies arrived. Deputy Reginald McKitt and Deputy Andrew Bryant were the deputies who responded to the scene. Deputy McKitt testified that approximately 30 minutes had passed from the time he was dispatched until he arrived at the cabin. Morrow told Deputy McKitt that he had heard gunshots coming from the petitioners’ truck when the truck was stopped on Brown Hill Road. Deputy McKitt asked the petitioners if there was a weapon in the truck, and they confirmed that there was. Deputy McKitt asked for permission to search the truck, and the petitioners consented to the search.
Deputy McKitt discovered W.F.’s unloaded rifle, with no magazine inserted, in the rear floorboard of the truck. Although Morrow testified that the rifle was equipped with a flash suppressor, R.J.J. said that the rifle did not have a flash suppressor but that it did have “a compensator that reduces kick.” The deputies testified that the rifle smelled as though it had been cleaned with cleaning fluid, and Morrow opined that the rifle had been “freshly wiped down with a solvent.” W.L.C. testified that the rifle was not cleaned that night.
Deputy McKitt testified that he could not determine if the weapon had been fired recently. He further testified that he did not find a magazine in the truck. However, R.J.J. and W.L.C. testified that the magazine was in the truck and that the magazine contained tracer rounds. According to W.L.C., “tracers are a phosphorous tip that, when shot from a gun, it glows. You can see it travel like a line through the sky—through the air, especially at night.” Morrow testified that he had not seen the alleged shots.
Morrow asked the deputies to perform a computer check of the serial number of the rifle, and he assisted them in locating the number. Deputy McKitt testified that “nothing came back in the system about *1157 the weapon.” The rifle was returned to the truck, and all parties left the scene. Morrow testified that, in his opinion, an AR-15 rifle firing ammunition out of the window of a vehicle would have thrown the shell casings back into the vehicle. Deputy McKitt did not find any shell casings in the truck. The next morning, Morrow searched for but found no shell casings in the area near the stop sign at the intersection of Brown Hill Road and Highway 29.
On January 7, 2013, Morrow signed out arrest warrants against the petitioners for hunting after dark, hunting from a public road, and hunting with the aid of an automobile. The Lowndes Circuit Court granted the petitioners’ request to be tried as youthful offenders and consolidated their cases for trial. The circuit court held a bench trial at which Morrow, the deputies, W.L.C., and R.J.J. testified. At the close of the State’s evidence, the petitioners moved for a judgment of acquittal, arguing that the State failed to prove their guilt beyond a reasonable doubt. The State opposed the petitioners’ motion on the ground that it had established a prima facie case of the petitioners’ guilt under Rogers v. State, 491 So.2d 987 (Ala.Crim.App.1985). The circuit court denied the petitioners’ motion. At the close of all the evidence, the petitioners again moved for a judgment of acquittal, which the court again denied.
At the conclusion of the trial, the circuit court found the petitioners guilty of hunting at night in violation of § 9-11-235, Ala.Code 1975,[1] hunting from a public road in violation of § 9-11-257, Ala.Code 1975,[2] and hunting with the aid of an automobile in violation of Rule 220-2-.ll(l), Ala. Admin. Code (Department of Conservation and Natural Resources).[3] The circuit court ordered each of the petitioners to *1158 pay $4,000 in fines plus court costs, revoked their hunting privileges for 3 years, and sentenced them to 6 months in the Lowndes County jail for the night-hunting conviction, 30 days for the hunting-with-the-aid-of-an-automobile conviction, and 30 days for the hunting-from-a-public-road conviction, the sentences to be served concurrently. The circuit court suspended the petitioners’ jail sentences and placed them on unsupervised probation for two years. The petitioners moved for an arrest of judgment and a judgment of acquittal or, in the alternative, a new trial. That motion was denied by operation of law.
The petitioners appealed their convictions and the denial of their postjudgment motion to the Court of Criminal Appeals. The Court of Criminal Appeals unanimously affirmed the judgment of the circuit court in an unpublished memorandum and denied the petitioners’ application for rehearing. The petitioners then petitioned this Court for a writ of certiorari. We granted the petition to consider the argument that the decision of the Court of Criminal Appeals affirming their convictions conflicts with Alabama precedent requiring the State to prove (1) every element of an offense and (2) that the accused acted with a culpable mental state.

II, Standard of Review

“A motion for a judgment of acquittal tests the legal sufficiency of the evidence.” State v. Grantland, 709 So.2d 1310, 1311 (Ala.Crim.App.1997).
“ ‘In determining the sufficiency of the evidence to sustain a conviction, a reviewing court must accept as true all evidence introduced by the State, accord the State all legitimate inferences therefrom, and consider all evidence in a light most favorable to the prosecution. Faircloth v. State, 471 So.2d 485 (Ala.Cr.App.1984), aff'd, 471 So.2d 493 (Ala.1985).’ Powe v. State, 597 So.2d 721, 724 (Ala.1991). It is not the function of this Court to decide whether the evidence is believable beyond a reasonable doubt, Pennington v. State, 421 So.2d 1361 (Ala.Cr.App.1982); rather, the function of this Court is to determine whether there is legal evidence from which a rational finder of fact could have, by fair inference, found the defendant guilty beyond a reasonable doubt. Davis v. State, 598 So.2d 1054 (Ala.Cr.App.1992). Thus, ‘[t]he role of appellate courts is not to say what the facts are. [Their role] is to judge whether the evidence is legally sufficient to allow submission of an issue for decision [by] the [fact-finder].’ Ex parte Bankston, 358 So.2d 1040, 1042 (Ala.1978) (emphasis original).”
Ex parte Woodall, 730 So.2d 652, 658 (Ala.1998). “ ‘ “This Court reviews pure questions of law in criminal cases de novo.” ’ ” Ex parte Knox, 201 So.3d 1213, 1216 (Ala.2015) (quoting Ex parte Morrow, 915 So.2d 539, 541 (Ala.2004), quoting in turn Ex parte Key, 890 So.2d 1056, 1059 (Ala.2003)).

III. Discussion

The petitioners challenge the sufficiency of the State’s evidence. They contend that the State produced no evidence indicating that the petitioners had in their possession an artificial light suitable for night hunting and that the State produced tenuous evidence indicating that the petitioners were in an area frequented by protected wildlife. The petitioners also contend that the State’s circumstantial evidence failed to link the petitioners to the shots allegedly fired and that evidence of two shots fired could not support three hunting convictions. Finally, the petitioners contend that the State failed to prove that the petitioners had the intent to hunt.
The State suggests that the petitioners are improperly challenging the weight of *1159 the evidence on appeal. According to the State, the circuit court was ■ in the best position to make the findings that the headlights on the truck were suitable for night hunting and that the area where the shots were allegedly fired was frequented by wildlife. The State also argues that the determination of the petitioners’ intent was best left to the circuit court as the finder of fact.
In opposing the petitioners’ motion for a judgment of acquittal made at the close of the State’s evidence, counsel for the State argued:
“And, Judge, under Rogers v. State[, 491 So.2d 987 (Ala.Crim.App.1985)], a prima facie case for night hunting is established when the State demonstrates that the accused is in an area where ... deer or other protected animals are thought to frequent, has in their possession a weapon or other device suitable for taking, capturing, or killing an animal protected by State law at night and where the appella[nt] was discovered after dark in an area inh[a]bited by deer having in his possession a rifle suitable for taking deer, that the evidence of guilty intent is sufficient under Rogers v. State for that.
“The other charges were hunting from a public road, which he has testified as to and the Court can take judicial notice as to Highway 29 and Brown Hill Road being a public road here in Lowndes County.
“Also, hunting from a vehicle, he has testified as to the vehicle. So the actual taking is not required, Judge, to show a prima facie case. Just the frequented area that has protected animals, the possession of a weapon, in this case, also a vehicle, and it being after dark. And he’s testified to the shots being fired from the vehicle.”
As demonstrated by counsel’s argument, the State pursued a theory of liability based on Rogers v. State, 491 So.2d 987 (Ala.Crim.App.1985), in which the Court of Criminal Appeals stated:
“We find, based upon the language of § 9-11-285, Code of Alabama 1975, that a prima facie ease for night hunting is established when the state demonstrates that the accused (1) is in an area which deer or other protected animals are thought to frequent, (2) has in his possession a light, and (3) has in his possession a weapon or other device suitable for taking, capturing, or killing an animal protected by state law, (4) at night.”
491 So.2d at 990 (opinion on return to remand). The State introduced evidence to show that, at night and in an area frequented by “protected animals,” the petitioners had in their “possession” “a light,” i,e., the headlights or left turn signal on the truck and that they had in their “possession” W.F.’s rifle. Under Rogers, the State is not required to show that an accused fired a weapon: mere possession of a weapon and a light at night in an area frequented by wildlife constitutes sufficient proof of night hunting. Therefore, evidence indicating that shots were fired from the truck in which the petitioners were traveling, though referenced by the State on appeal, is not necessary to support the State’s theory of culpability under Rogers.
Although only § 9-11-235 (night hunting) was before the Court of Criminal Appeals in Rogers, the State in this case relied on Rogers as support for the charges that the petitioners violated § 9-11-257 (hunting from a public road) and Rule 220-2-.11(1) (hunting with the aid of an automobile). Having offered evidence under Rogers to establish that the petitioners were hunting after dark, the State sought to establish prima facie cases of the other charges by introducing evidence of an additional fact to support each respective charge: Specifically, the State pro *1160 duced evidence indicating that the petitioners were in an automobile and on a public road at the time they “possessed” the rifle and light at night in an area frequented by wildlife. The State thereby invoked Rogers to suppoi"t all three hunting charges.
However, the State argues to this Court, as it argued to the Court of Criminal Appeals, that the evidence also supported a finding that each of the petitioners was guilty of aiding and abetting the others in the commission of the charged offenses. “A person is legally accountable for the behavior of another constituting a criminal offense if, with the intent to promote or assist the commission of the offense ... [h]e aids or abets such other person in committing the offense § 13A-2-23(2), Ala.Code 1975. “For one to be convicted as an aider or abettor, evidence showing an offense to have been committed by a principal is necessary, although it is not required that the principal be convicted or even his identity established.” Evans v. State, 508 So.2d 1205, 1207 (Ala.Crim.App.1987).
“Complicity is a theory for imposing criminal culpability, for which aiding and abetting may be an element.” Ex parte Farrell, 591 So.2d 444, 447 (Ala.1991). In the circuit court, however, the State did not pursue a complicity theory by attempting to prove that each of the petitioners rendered assistance to the others in the commission of hunting offenses. Rather, the State pursued a theory under Rogers by seeking to prove that each petitioner was in possession of a weapon and a light at night in an area frequented by wildlife. The State may not advance a new legal theory on appeal that it failed to argue below. Ex parte Knox, supra. Thus, evidence that one of the petitioners contrived a story about firecrackers when questioned by Morrow, while potentially relevant to an aiding-and-abetting theory, is not relevant to the theory the State pursued in the circuit court. The sufficiency of the State’s evidence in this case stands or falls on Rogers.
In evaluating the State’s reliance on Rogers, we must consider whether the elements of a prima facie case of night hunting as stated in Rogers are consistent with the night-hunting statute. The night-hunting statute, § 9-11-285, makes it a class B misdemeanor to “take, capture, or kill, or attempt to take, capture, or kill any bird or animal protected by the laws of this state between sunset and daylight of the following day.” (Emphasis added.) Thus, under the statute, attempting to hunt after dark is equivalent to the completed offense of night hunting. Clearly, under the facts here, where there is no evidence indicating that a protected bird or animal was taken, captured, or killed, the State could prove only an attempt.
“A person is guilty of an attempt to commit a crime if, with the intent to commit a specific offense, he does any overt act towards the commission of such offense.” § 13A-4-2(a), Ala.Code 1975. “An attempt to commit a crime consists of three elements: First, the intent to commit the crime; second, the performance of some oveit act towards the committing of the crime; and, third, the failure to consummate the crime.” Ard v. State, 358 So.2d 792, 793 (Ala.Crim.App.1978). The elements of night hunting as set out in Rogers do not include the taking, capturing, or killing of a protected bird or animal. Consequently, the theory of liability advanced in Rogers, if valid, requires only a showing that the accused attempted to take, capture, or kill a protected bird or animal at night.
Therefore, the dispositive issue before us is whether merely possessing a weapon and a light at night in an area frequented by wildlife, without any other attendant circumstances, constitutes at *1161 tempted, hunting at night, a violation of § 9-11-235. Although one guilty of criminal attempt must intend to commit the crime, the elements of night hunting as set out in Rogers do not include a culpable mental state. Thus, the validity of Rogers depends on whether the elements set out in that case establish both (1) an overt act toward the commission of night hunting and (2) specific intent to hunt at night.
We consider whether possessing a light and a weapon suitable for hunting, at night and in an area frequented by wildlife, is an overt act toward the commission of hunting after dark. In Minshew v. State, 594 So.2d 703 (Ala.Crim.App.1991), the Alabama Court of Criminal Appeals considered whether there was sufficient evidence to sustain a defendant’s conviction for attempted murder. After repeatedly threatening to kill the victim, the defendant was later discovered hiding behind a truck in the driveway of the victim’s residence with a loaded .357 magnum derringer. The court referenced both the defendant’s pri- or threats and his possession of a loaded firearm as sufficient indicia of his intent to kill. Also, because of the defendant’s prior threats, “[t]he jury was therefore warranted in drawing the conclusion that his intent was to kill, and by lying in wait, armed, at [the victim’s] residence, he had performed an overt act towards the effec-tuation of that intent.” 594 So.2d at 712.
Minshew considered evidence indicating that the defendant possessed a firearm in a place that might yield the opportunity to commit a crime in light of all the attendant circumstances; Rogers, however, authorizes trial courts to consider similar evidence in a vacuum. Whereas the defendant’s prior threats in Minshew helped make his subsequent conduct an overt act toward the commission of a criminal offense, the Court of Criminal Appeals in Rogers determined that certain conduct always qualifies as an overt act, regardless of the attendant circumstances. We must determine whether the conduct specified in Rogers, taken by itself, satisfies Alabama’s criterion of an overt act toward the commission of a criminal offense necessary to constitute an attempt in every conceivable situation.[4]
“An ‘overt act’ is more than ‘mere intention’ or ‘preparation’ to commit a specific crime. Whiddon v. State, 53 Ala.App. 280, 283, 299 So.2d 326, 329-30 (1973). ‘The attempt is complete and punishable, when an act is done with intent to commit the crime, which is adapted to the perpetration of it, whether the purpose fails by reason of interruption, or for other extrinsic cause. The act must reach far enough towards the accomplishment of the desired result to amount to the commencement of consummation.’ Id. (Emphasis added.)”
*1162 Ex parte A.T.M., 804 So.2d 171, 174 (Ala.2000). ‘“Preparation alone is not sufficient. Something more is required than mere menace, preparation, or planning.’” Minshew, 594 So.2d at 709 (quoting Whiddon v. State, 53 Ala.App. 280, 283, 299 So.2d 326, 329-30 (1973)). To prove an attempt, the State must show that the defendant “made any move” to perform activity constituting the core of the underlying offense. A.T.M., 804 So.2d at 174.
In Ex parte James, 468 So.2d 889 (Ala.1984), this Court considered whether a defendant convicted of first-degree robbery had committed an overt act toward the commission of attempted theft. Attempted theft requires “some overt act in furtherance of a completed taking away or carrying away of the personal property of another.” 468 So.2d at 891. Like attempted night hunting and completed night hunting, attempted theft and completed theft are one and the same offense. See § 13A-8-40, Ala.Code 1975.
The defendant in James told the assistant manager of a Winn-Dixie grocery store that another man standing at the register had a gun, and he instructed the assistant manager to “do as he says.” 468 So.2d at 890. The Court held that the defendant’s statement did not constitute attempted theft because “it appears that no property was touched, that the defendant did not attempt to touch any, and that defendant did not ask for, or even remotely allude to, any property.” 468 So.2d at 891.
Rogers is inconsistent with the requirement of A.T.M. and with our application of that requirement in James—that one committing criminal attempt make some move to perform the activity forming the core of the underlying offense. Although the core of theft is asportation of property, the core of night hunting is the taking, capturing, or killing of a protected bird or animal. Merely traveling in a vehicle with a weapon through the habitat of protected wildlife at night falls short of making a move that amounts to “the commencement of consummation” of the offense. A.T.M., 804 So.2d at 174. Such acts may be “remote preparatory acts not reasonably in the chain of causation,” but they do not constitute attempt. Huggins v. State, 41 Ala.App. 548, 550, 142 So.2d 915, 917 (1962).[5]
In stating the prima facie elements of night hunting in Rogers, the Court of Criminal Appeals set a lower evidentiary standard of proof than does the night-hunting statute itself. However, the constitutional doctrine of separation of powers precludes the judiciary from changing a criminal offense. Beck v. State, 396 So.2d 645, 662 (Ala.1980). “[A] court may explain the language [in a statute], but it may not detract from or add to the statute.... ” Water Works & Sewer Bd. of Selma v. Randolph, 833 So.2d 604, 607 (Ala.2002) (quoted with approval in City of Prichard v. Balzer, 95 So.3d 1, 3 (Ala.2012)). Appellate courts are “ ‘not at liberty to rewrite statutes.’ ” Walker v. Montgomery Cnty. Bd. of Educ., 85 So.3d 1008, 1012 (Ala.Civ.App.2011) (quoting Ex parte Carlton, 867 So.2d 332, 338 (Ala.2003)).
*1163 Because we determine that the conduct specified in Rogers as constituting a prima facie case of night hunting does not, by itself and in every case, constitute an overt act toward the commission of the offense of night hunting, we need not determine whether such conduct creates the reasonable inference that the actor intends to hunt after dark. The theory of night hunting crafted by the Court of Criminal Appeals in Rogers is inconsistent with the statute making night hunting a criminal offense.
This Court has never relied upon Rogers. Indeed, this Court reversed the judgment of the Court of Criminal Appeals in the only decision that has referenced Rogers. In Phillips v. State, 771 So.2d 1061 (Ala.Crim.App.1998), the Court of Criminal Appeals held that hunting over a baited field, a violation of § 9-11-244, Ala.Code 1975, is a strict-liability offense with no requirement of a culpable mental state. The court noted that Rogers similarly did not require proof of a culpable mental state for the offense of night hunting. We reversed that court’s judgment in Ex parte Phillips, 771 So.2d 1066 (Ala.2000), holding that a culpable mental state is an element of hunting over a baited field in the absence of an express statement in the statute to the contrary. See § 13A-2-4(b), Ala.Code 1975 (“A statute defining a crime, unless clearly indicating a legislative intent to impose strict liability, states a crime of mental culpability.”).
Because our review in the instant case presents this Court with its first opportunity to address Rogers, we are not going to decline to pass upon the validity of that case merely because it is assumed by the parties. See Travelers Indem. Co. of Connecticut v. Miller, 86 So.3d 338, 347 (Ala.2011) (expressly overruling a case without being asked to do so because the case was an “aberration” upon which this Court had not sufficiently relied, and reversing the judgment of the court below). Accordingly, we decline to follow Rogers.
In determining whether, in the absence of Rogers, the State made out a prima facie case of each of the charged hunting offenses, the applicable standard is substantial evidence: Whether the convictions are supported by substantial evidence, i.e., “evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” American Nat’l Fire Ins. Co. v. Hughes, 624 So.2d 1362, 1366-67 (Ala.1998) (quoting West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989)). The State has failed to prove the offenses by substantial evidence.
The State invoked Rogers as the basis of all the hunting charges against the petitioners. Because we reject Rogers today, and because the State has failed to present substantial evidence that the petitioners are guilty of the charged hunting offenses, all of the petitioners’ convictions must be vacated. As' noted previously, the State did not try the case below on the theory that each of the petitioners aided and abetted one another in the commission of the charged hunting offenses. That theory, therefore, is no longer available to the State, because “the Double Jeopardy Clause bars retrial when a conviction is reversed solely on the basis of an insufficiency of the evidence.” Lindley v. State, 728 So.2d 1153, 1157 (Ala.1998). We therefore reverse the judgment' of the Court of Criminal Appeals and remand for that court to instruct the circuit court to vacate the petitioners’ convictions and sentences and to enter a judgment acquitting the petitioners of all charges.
REVERSED AND REMANDED.
PARKER and WISE, JJ., concur.
*1164 MURDOCK and BRYAN, JJ., concur in the result.
STUART, BOLIN, SHAW, and MAIN, JJ., dissent.

. Section 9-11-235 provides, in pertinent part:
"It shall be unlawful, except as to trapping as otherwise provided by law, for a person to take, capture, or kill, or attempt to take, capture, or kill any bird or animal protected by the laws of this state between sunset and daylight of the following day, except that the Commissioner of Conservation and Natural Resources may by a duly promulgated regulation, allow the taking, catching, or killing of raccoons or opossums between sunset and daylight in any county or counties within the state....
"Any person violating this section shall be guilty of a Class B misdemeanor and, upon conviction thereof, shall be punished for the first offense by a fine of not less than two thousand dollars ($2,000) nor more than three thousand dollars ($3,000) and may be imprisoned in the county jail for a period not to exceed six months. In addition, the court shall revoke all hunting license privileges for a period of three years from the date of conviction.”

. Section 9-11-257 provides:
"Any person, except a duly authorized law enforcement officer acting in the line of duty or person authorized by law, who hunts or discharges any firearm from, upon, or across any public road, public highway, or railroad, or the right-of-way of any public road, public highway, or railroad, or any person, except a landowner or his or her immediate family hunting on land of the landowner, who hunts within 50 yards of a public road, public highway, or railroad, or their rights-of-way, with a cen-terfire rifle, a shotgun using slug or shot larger in diameter than manufacturer’s standard designated number four shot, or a muzzleloading rifle .40 caliber or larger in this state, shall be guilty of a misdemeanor and, upon conviction, shall be punished for the first offense by a fine of not less than one thousand dollars ($1,000), and shall be punished for the second and each subsequent offense by a fine of not less than two thousand dollars ($2,000) and shall have all hunting license privileges revoked for one year from the date of conviction.”

.Rule 220-2-, 11(1) provides:
"It shall be unlawful to concentrate, drive, rally, molest or to hunt, take, capture or kill or attempt to hunt, take, capture or kill any bird or animal from or by the aid of "(1) Any automobile....”

. Although the soundness of Rogers presents this Court with a question of law and not of fact, we are mindful that the facts of the instant case exemplify the extreme to which the theory of liability in Rogers may be pushed. Rogers involved a defendant, with a gun slung over his shoulder, circling a pasture on his motorcycle and using the headlight of the motorcycle to pan the pasture. When a conservation officer attempted to stop the defendant, the defendant gunned the motorcycle and sped to a nearby house. He went inside and removed his shirt, shoes, and socks in an apparent attempt to create the impression that he had not been out of the house. The defendant was charged with and convicted of hunting at night. Here, by contrast, the State sought to establish that riding down a public road in a truck with a weapon inside constituted "possession” of a weapon, and that, if the turn signal or headlights of the truck were engaged, the occupant was in "possession” of a light for purposes of night hunting. We consider Rogers as it may be applied to any situation, and we do so in light of its illustrative application to the relevant circumstances of the instant case.

. There must be some showing of intent to commit the crime alleged. For example, to be convicted of the crime of possession of burglar’s tools, § 13A-7-8, Ala.Code 1975, it is "insufficient to establish that he had a felonious intent” to show that a defendant merely possesses "common hand tools such as a hammer, a screwdriver, pliers, etc., which could facilitate a forcible entry into premises.” McGlon v. State, 504 So.2d 745, 746 (Ala.Crim.App.1987). See also id.., 504 So.2d at 746 (emphasizing it is "the intention to use the ‘explosive, tool, instrument or other article’ in the commission of a ‘forcible entry’ or ‘theft by a physical taking’ ” that is "the most important element of the offense”).